Motion to dismiss appeal denied October 16, 1917.

Argued on the merits October 3, reversed December 11, 1917.

## Ex Parte TURNER.
## TURNER *v.* HENDRYX.*

(167 Pac. 1019; 169 Pac. 109.)

**Habeas Corpus—Dismissal—Pendency of Proceedings.**

1.   An appeal from a judgment denying a petition for *habeas corpus* to obtain the custody of an infant will not be dismissed because respondents, by a decree of the County Court, entered on the same day as the judgment, were awarded custody of the child under a petition for adoption; a writ of review in the adoption proceedings having been issued and being pending in the Circuit Court.

### ON THE MERITS.

**Habeas Corpus—Appeal—Scope.**

2.   *Habeas corpus* to determine right to custody of infant is equitable in nature, and the review on appeal is *de novo*, despite Section 669, L. O. L., providing for appeal in *habeas corpus* "in like manner and with like effect as in an action"; no impairment of the writ being within the legislative power, and the equitable nature, as to infants, having existed at common law.

[As to matters to be considered in determining the custody of child on *habeas corpus*, see note in **Ann. Cas.** 1914A, 740.]

**Habeas Corpus—Custody of Infant—Rights.**

3.   Evidence that father, on death of child's mother, and after statement of her sister, "Give the child to me and I will raise it," said, "You shall have it," does not justify the court, in *habeas corpus* on petition of the father, in ignoring his natural rights.

**Habeas Corpus—Custody of Infant—Rights.**

4.   Where the father, on death of child's mother, and after statement of her sister, "Give the child to me and I will raise it," said, "You shall have it," he could revoke such agreement.

**Words and Phrases—"In Like Manner"—"Like."**

5.   When the statute says that an appeal in a proceeding by *habeas corpus* shall be "in like manner * * as in an action," it means that the mode of appealing is the same as the mode of appealing in an action at law (per Mr. Justice HARRIS, specially concurring, citing Words and Phrases, "Like"; "Like Manner").

From Multnomah: CALVIN U. GANTENBEIN, Judge.

On motion to dismiss appeal. Motion denied.

---

*Authorities discussing the question of *habeas corpus* decree as to custody of infant as *res judicata,* see notes in 67 **L. R. A.** 783; 49 **L. R. A. (N. S.)** 83.	REPORTER.

*Mr. John C. McCue,* for the motion.

*Messrs. Hurlburt & Layton, contra.*

Department 1. MR. JUSTICE BENSON delivered the opinion of the court.

1. Respondents move to dismiss the appeal for the reason that the Multnomah County Court has disposed of the matter by a decree awarding the child in question to them under a petition for the adoption of the boy. An investigation discloses that this proceeding was begun in the Circuit Court on March 13, 1917, and that before answering herein defendants filed a petition in the County Court asking for the adoption of the child upon the ground that the father had abandoned it. The decrees were both made and entered on March 23d. Since the appeal was perfected in this case a writ of review has been issued and is now pending in the Circuit Court in the adoption proceedings. This state of facts is not grounds for the dismissal of an appeal: 4 C. J. 586. The motion is therefore denied.                    DENIED.

MR. CHIEF JUSTICE McBRIDE, MR. JUSTICE BURNETT and MR. JUSTICE HARRIS concur.

---

Reversed December 11, 1917.
ON THE MERITS.
(169 Pac. 109.)

In Banc. Statement by MR. JUSTICE BENSON.

This is a proceeding by *habeas corpus* wherein the father of the infant child, Charles R. Turner, seeks to regain the custody of the boy from the defendants.

The trial court dismissed the writ and awarded the permanent custody to the defendants.   The petitioner appeals.                    REVERSED.   DECREE RENDERED.

For appellant there was a brief over the name of *Messrs. Hurlburt & Layton,* with an oral argument by *Mr. W. B. Layton.*

For respondents there was a brief and an oral argument by *Mr. John C. McCue.*

MR. JUSTICE BENSON delivered the opinion of the court.

It is urged by respondents that *habeas corpus* is a proceeding at law rather than in equity and that since there is no bill of exceptions this court can only consider the question as to whether or not the findings of fact support the judgment.   This theory is based upon the language of Section 669, L. O. L., which reads as follows: ·

"Any party to a proceeding by *habeas corpus,* including the state when the district attorney appears therein, may appeal from the judgment of the Circuit or County Court refusing to allow such writ or any final judgment therein, either in term time or vacation, in like manner and with like effect as in an action.   No question once finally determined upon a proceeding by *habeas corpus* shall be re-examined upon another or subsequent proceeding of the same kind."

In the consideration of this problem, it is logically necessary to consider the origin and purpose of the writ which has been invoked in this case.   An excellent authority has said:

"Relief from illegal imprisonment by means of *habeas corpus* is not the creature of any statute, and

the origin and history of the writ are lost in antiquity": 12 R. C. L., p. 1180.

The same authority further says:

"The writ of *habeas corpus,* designed and admirably adapted to secure individual freedom, has come to be applied to other uses, and among them, to the ascertainment and enforcement of the right of custody of infant children": 12 R. C. L., p. 1214.

"The ascertainment and enforcement of the custody of minor children by the use of the writ of *habeas corpus* is one of an equitable nature, and in such cases the question of personal freedom is not involved, for an infant, from humane and obvious reasons, is presumed to be in the custody of some one until it has attained its majority; and the court, when asked to restore an infant, is not bound by any mere legal right of parent or guardian but is to give it due weight as a claim founded on human nature, and generally equitable and just.   Therefore these cases are not decided upon the legal right of the petitioner to be relieved from unlawful imprisonment or detention, as in the case of an adult, but upon the court's view of the best interests of those whose welfare requires that they be in custody of one person or another; and hence a court is in no case bound to deliver a child into the custody of any claimant or of any person, but should, in the exercise of a sound judicial discretion after a careful consideration of the facts leave it in such custody as the welfare of the child at the time appears to require": 12 R. C. L., p. 1215.

It is useless to cite other authorities to this doctrine for the quotations above set out voice the unanimous verdict of both text-books and cases.

2. Of course this use of the writ is not the original one nor is it to-day the dominant use, for the reports of our state disclose but one other case in this state where it has been invoked for this purpose: *Ex parte Barnes,* 54 Or. 548 (104 Pac. 296, 21 Ann. Cas. 465,

25 L. R. A. (N. S.) 172). In that case it was treated by opposing counsel and by this court without question, as an equitable proceeding and accorded a *de novo* hearing. This we think was clearly proper. The very nature of the investigation, the peculiar latitude involved in the inquiry, the nature of the relief sought and granted, all present an irresistible demand for the intervention of a court of equity. In the absence of our statute, quoted *supra,* it must be conceded that a court of equity would have jurisdiction. It has been held that since the Constitution, in its provision for maintaining the writ at all times except when in rebellion or invasion the public safety requires its suspension, is a protection of the writ as it obtained under the common law, no legislature can abrogate or impair its efficiency: *People ex rel. Tweed* v. *Liscomb,* 60 N. Y. 559 (19 Am. Rep. 211); *Servonitz* v. *State,* 133 Wis. 231 (113 N. W. 277, 126 Am. St. Rep. 955); from all of which we conclude that the use of the writ, as it was available at common law, is still available in courts of equity, and the fact that our legislature has seen fit only to provide a mode of procedure for its exercise in the cases for which it was originally designed, and is silent as to procedure in cases calling for the exercise of chancery powers in connection therewith, it follows that the statutory proceedings in equity cases are still available in this proceeding, which is clearly *sui generis.* We shall therefore consider the case as pending before us a *de novo* hearing.

3, 4. We come then to a consideration of the evidence. From the evidence it clearly appears that the child was born on December 12, 1911, in Clarke County, State of Washington; that the mother died a few hours after the birth; and that it was at once decided that the father (petitioner) should take the body of his

dead wife to White Salmon, her former home, for burial. The presence of the new born babe aroused a discussion of its immediate care. According to her own testimony, the defendant Jennet E. Hendryx, a sister of the deceased mother, being present, said, "Give it to me and I will raise it"; to which she says the father replied, "You shall have it." The father disputes this version and insists that he consented only to a temporary care of the babe by her. The father was gone three days on his trip to White Salmon and on his return left the child in the care of defendants who then lived on a farm about two miles from that of petitioner. While they were such near neighbors the father visited his child weekly but after a time defendants moved; first to eastern Oregon and later to a mine in southern Oregon, finally locating in Portland, during all of which time they kept the child with them. The father sent them small sums of money from time to time to aid in caring for the infant although the amount so remitted is uncertain. The defendants insist that they only received $105 from the father, while he maintains that it was a much larger sum. When the child was about five years old the father married again and has made several attempts to regain possession of the little boy, culminating in this proceeding. There is no evidence which tends to indicate that the petitioner is in any way unworthy or unfit to have the custody of his child nor is any question suggested as to the character of his wife. The evidence certainly does not disclose any conduct indicating an abandonment unless it be found in the testimony of Mrs. Hendryx in regard to the conversation had at the time of the mother's death when she urges that he gave the infant to her. Such evidence does not justify a court in ignoring the natural rights

of a father and, even if it were undisputed, the great weight of authority is to the effect that the father has a right to revoke such an agreement since a child is not a chattel, subject to sale or cold-blooded bargaining. The case of *Ex parte Barnes,* 54 Or. 548 (104 Pac. 296, 21 Ann. Cas. 465, 25 L. R. A. (N. S.) 172), is a case so completely in point that we adopt as the law of this case the reasoning found therein. The decree of the trial court is reversed and one will be entered here awarding the custody of the infant to petitioner.          Reversed. Decree Rendered.

Mr. Chief Justice McBride, Mr. Justice Bean, Mr. Justice Moore and Mr. Justice McCamant concur.

Mr. Justice Harris delivered the following specially concurring opinion:

I cannot concur with all that is said by Mr. Justice Benson, although I agree with the conclusion that the judgment should be reversed. There is no bill of exceptions in the record; and in my opinion the absence of a bill of exceptions not only precludes us from trying the cause *de novo* but also prevents us from re-examining any disputed question of fact, if the decision of such disputed question of fact is dependent upon the evidence offered at the trial. Among the files is a transcript of the testimony certified to by the official court reporter and by the county clerk, but this transcript is not certified to or signed by the circuit judge. If the evidence cannot be presented on appeal except through the medium of a bill of exceptions then the inevitable conclusion is that we cannot on this appeal try the cause anew or re-examine the evidence for the purpose of deciding any question of fact: *Smith* v. *Walters,* 76 Or. 76 (147 Pac. 925).

To construe the meaning of the language found in Section 669, L. O. L., is to decide whether a bill of exceptions is necessary and for that reason the material part of the section is here set down:

"Any party to a proceeding by *habeas corpus*, * * may appeal from the judgment of the Circuit or County Court refusing to allow such writ or any final judgment therein, either in term time or vacation, *in like manner and with like effect as in an action.*"

A defeated litigant has no inherent right to appeal and consequently the right of appeal does not exist unless it has been granted by a statute. The legislature has granted the right of appeal, but it also prescribed the manner in which the right must be exercised as well as the effect of the exercise of the right, and therefore when a party to a proceeding by *habeas corpus* appeals he must do so in the manner pointed out by Section 669.

5. The statute prescribes that a party to a proceeding by *habeas corpus* may appeal *"in like manner and with like effect as in an action."* The word "manner" means the way of performing anything; the mode in which an act shall be done; the way of doing a thing; the method of procedure: 25 Cyc. 516; *Livesley* v. *Litchfield,* 47 Or. 248, 255 (83 Pac. 142, 114 Am. St. Rep. 920). When the statute says that an appeal in a proceeding by *habeas corpus* shall be "in like manner * * as in an action" it means that the mode of appealing is the same as the mode of appealing in an action at law; and this is only one way of saying that the method of procedure prescribed for appeals in suits in equity cannot be followed when a party appeals from a judgment in a proceeding by *habeas corpus:* 5 Words and Phrases, 4159, 4151.

Our Code recognizes a distinction between actions at law and suits in equity. This distinction is carefully preserved in the terminology employed throughout the Code. Not only the proceeding itself but its ending is designated according to its character. The proceeding may be an action and if it is, it terminates in a judgment; or it may be a suit, and if it is, it ends in a decree. The distinction between a suit in equity and an action at law is recognized in the chapter dealing with the proceeding by *habeas corpus;* and moreover, the same distinction is likewise preserved in the chapters dealing with the writs of review and *mandamus* and the punishment of contempts. A proceeding by *habeas corpus* is not, strictly speaking, an action at law or a suit in equity, but it is classified as a special proceeding. However, a determination of the rights of the parties in these several special proceedings, whether *habeas corpus, mandamus,* review or contempt, is called a *judgment;* and, furthermore, the definition of a motion and an order in an action are applicable to similar acts in a special proceeding: Section 601, L. O. L. The language found in Section 669, L. O. L., is not peculiar to that section, but the same language is employed in the section granting the right of appeal from a judgment of the Circuit Court upon a writ of review.; Section 611 L. O. L.; in a *mandamus* proceeding: Section 626, L. O. L.; and in a proceeding for the punishment of contempt: Section 684, L. O. L.

If a party to a proceeding by *habeas corpus* must appeal from the *judgment* of the Circuit Court by following the mode prescribed *in an action* then we must ascertain whether the appellant has followed that mode. The appellant gave a notice of appeal and filed an undertaking. These two steps must be taken whether the appeal is from a decree or a judgment:

Section 550, L. O. L., as amended by Chapter 319, Laws of 1913. The next step is to file a transcript. The transcript is made necessary by Section 554, L. O. L., as amended by Chapter 320, Laws of 1913, and since this section of the Code occupies a determining position in the investigation, it will be proper to quote the material part of it:

"Sec. 554. Upon the appeal being perfected the appellant shall, within 30 days thereafter, file with the clerk of the appellate court a transcript or such an abstract as the law or the rules of the appellate court may require, of so much of the record as may be necessary to intelligibly present the question to be decided by the appellate tribunal, together with a copy of the judgment or decree appealed from, the notice of appeal and proof of service thereof, and of the undertaking on appeal; * * and after compliance with the provisions hereof the appellate court shall have jurisdiction of the cause, but not otherwise;

"1. If the appeal is from a decree and the cause is to be tried anew on the testimony, the clerk shall attach together the testimony, depositions and other papers on file in his office containing the evidence heard or offered on trial in the court below, and deliver the same to the appellant, taking therefor his receipt in duplicate, one of which receipts he shall file in his office and the other deliver to the respondent when so requested. *Such evidence shall be deemed a part of the transcript or abstract,* and shall be filed therewith."

The several chapters of the Code dealing with the writs of review and *mandamus, habeas corpus* and contempts, and now codified in Sections 600, L. O. L., to 684, L. O. L., inclusive, were originally enacted as component parts of the Code of Civil Procedure which was framed by the Code commissioners and passed by the legislative assembly in 1862. The chapter providing for appeals, now found in Section 548, L. O. L., to Section 560, L. O. L., inclusive, was incorporated

into the Code of Civil Procedure as it was enacted in 1862; and it may be added that every other section of the Code mentioned herein finds its origin in the Code of Civil Procedure which was adopted in 1862.

The important place occupied by Section 554, L. O. L., is made apparent when we read in Section 556, L. O. L., that

"Upon an appeal from a *judgment,* the same shall only be reviewed as to questions of law appearing upon the *transcript,* and shall only be reversed or modified for errors substantially affecting the rights of the appellant; * * and upon an appeal from a *decree* given in any court the suit shall be tried anew upon the *transcript and evidence accompanying it.*"

Since Section 554 has been amended frequently it may be helpful if we give some attention to the section as originally enacted, and for that reason the material part of the section as it appears in the Code of Civil Procedure as adopted in 1862, is here given:

"Upon the appeal being perfected, the appellant shall within twenty days thereafter if the appeal be to the supreme court, * * file with the clerk of the appellate court the transcript of the cause, as provided in this section and thereafter the appellate court has jurisdiction of the cause, and not otherwise.

"1. The transcript is a copy, certified by the clerk, of the roll or final record, or the pleadings, orders, papers and journal entries that constitute such roll or record, together with a copy of the notice of appeal and any order enlarging the time to file the transcript, and a statement of the filing of the undertaking, whether by the appellant or respondent, the names of the sureties therein, the amount thereof if the same is specified, and if given by the appellant whether the undertaking is given for an appeal only, or a stay of proceedings also.

"2. If the appeal is from a decree, the clerk shall attach together the depositions and other papers on

file in his office, containing the evidence heard or offered on the trial in the court below, and append thereto his certificate to that effect, and deliver them to the appellant with the transcript, taking therefor his receipt in duplicate, one of which he shall file in his office and deliver the other to the respondent when so requested. For the purpose of acquiring jurisdiction by the appellate court, such evidence shall be deemed a part of the transcript, and shall be filed therewith.''

The transcript mentioned in Sections 554 and 556, L. O. L., was expressly defined in Section 554, as originally enacted, to be a copy of the final record or judgment-roll: *Farrell* v. *Oregon Gold Co.*, 31 Or. 463, 472 (49 Pac. 876). When an action results in a judgment or a suit in a decree the clerk is required to prepare a judgment-roll. If the defendant has appeared and contested the action or suit the clerk prepares the judgment-roll by attaching together the summons and proof of service, the pleadings, bill of exceptions, all orders relating to a change of the parties together with a copy of the entry of judgment or decree and all other journal entries or orders in any way involving the merits and necessarily affecting the judgment or decree: Sections 208 and 413, L. O. L. There may be a bill of exceptions in an action at law but the Code does not provide for a bill of exceptions in a suit in equity: *Sutherlin* v. *Bloomer,* 50 Or. 398, 403 (93 Pac. 135). In an action at law the objection is stated with so much of the evidence as is necessary to explain it and when the statement or bill of exceptions is settled and allowed it is filed with the clerk and becomes ''a part of the record of the cause'': Sections 171, as amended by Chapter 332, Laws 1913, and 172, L. O. L.

Turning again to Section 554, L. O. L., it will be seen that this section provides for the third step to be taken by an appellant. The filing of a transcript or its

equivalent "such an abstract as the law or the rules
of the appellate court may require," with a copy of
the judgment or decree appealed from, the notice of
appeal and proof of service and of the undertaking
on appeal, is the third step required of an appellant
whether the appeal be from a judgment or from a
decree. Originally, the appellant was obliged to file
a transcript of the entire judgment-roll, but now the
transcript or abstract need only be "of so much of
the record as may be necessary to intelligibly present
the question to be decided by the appellate tribunal"
together with a copy of the judgment or decree, notice
of appeal and undertaking. There is no method
pointed out by the Code or by any statute by which
the evidence or any part of it can be brought to the
Supreme Court, whether the appeal is from a judg-
ment or a decree, except by making the evidence a
part of the transcript. If the appeal is from a judg-
ment in an action the evidence or so much of it as is
necessary to explain the objection can be written into
a bill of exceptions and thus becomes a part of the
judgment-roll and consequently appears in the tran-
script which the appellant files. In order to save the
expense of making copies, Chapter 335, Laws of 1913,
directs that the original pleadings and the original bill
of exceptions shall be sent to the Supreme Court to
be "a part of the transcript" so long as needed in the
appellate court. While it is true that Section 171,
L. O. L., as amended by Chapter 332, Laws of 1913,
speaks of "a transcript of the whole testimony and
all of the proceedings had at the trial," it is also true
that to be available on appeal the transcript of the
testimony must be in the form of a bill of exceptions.
The amendment itself speaks of "the bill of excep-
tions"; and, moreover, the bill of exceptions must be

signed by the judge before it can become a part of the judgment-roll: Section 172, L. O. L.

The Code does not provide for a bill of exceptions in a suit in equity and since the evidence taken in a suit cannot be carried into the judgment-roll by means of a bill of exceptions, the Code has directed that, when an appeal is from a decree, the clerk shall deliver the evidence to the appellant who then files it and, when filed, "such evidence shall be *deemed a part of the transcript or abstract"*: Section 554, subd. 1, L. O. L. This is the only authority found in the Code for bringing the evidence to this court upon an appeal from a decree rendered by the Circuit Court in a suit.

In short, whether the appeal is from a judgment or a decree, the appellant must file a transcript, or its equivalent, an abstract; the transcript is a copy of the judgment-roll or such part of it as may be necessary to intelligibly present the question to be decided; if the appeal is from a judgment the evidence can be carried into the judgment-roll through a bill of exceptions, but there is no other method by which this can be done; if the appeal is from a decree the evidence cannot become a part of the judgment-roll, but it can be filed with the transcript in this court and, when so filed, shall be *deemed a part of the transcript;* and when heard in this court the appeal from a judgment is reviewed as to questions of law *appearing upon the transcript.* Reading Sections 172 and 208 together it will be seen that each fits and harmonizes with the other. Under Section 172 an exception need not be taken to any decision upon a matter of law, when the same is entered in the journal, or made wholly upon matters in writing and on file in the court, because by the terms of Section 208 such decision necessarily appears in the judgment-roll prepared by the clerk. Reduced to its

final terms, an appeal from a judgment is heard upon
the judgment-roll; the judgment-roll may or may not
contain a bill of exceptions; if there is no bill of ex-
ceptions then this court cannot consider the evidence
heard in the Circuit Court because this court is con-
fined to the judgment-roll; but if the judgment-roll
contains a bill of exceptions this court can consider the
evidence appearing in the bill of exceptions. If in the
instant case we try the cause *de novo* we do so on evi-
dence which is brought here in the manner prescribed
for appeals from decrees; and in my opinion this is in
direct violation of Section 669, L. O. L., which com-
mands that the appeal shall be *"in like manner and
with like effect as in an action."* The statute fixes the
mode and the mode so fixed is the measure of the right
to appeal. The opinion in *Barnes* v. *Long,* 54 Or. 548
(104 Pac. 296, 21 Ann. Cas. 465, 25 L. R. A. (N. S.)
172), should not be regarded as a precedent because
the question of the necessity of a bill of exceptions was
neither raised nor considered.

If it be suggested that the findings of fact made by
the trial court are conclusive upon this court and there-
fore preclude a retrial of the issues, even though all
the evidence is brought here by a bill of exceptions, the
answer is that the rule of conclusiveness has no ap-
plication in the instant case. The quality of con-
clusiveness is imparted to findings of the court upon the
facts by force of Section 159, L. O. L., which declares
that "the finding of the court upon the facts shall be
deemed a verdict, and may be set aside in the same
manner and for the same reasons." If the parties
here had been entitled to a jury trial and had waived
trial by a jury, then the findings of the court upon the
facts would be conclusive upon appeal if there was evi-
dence to support the findings; but in this proceeding

by *habeas corpus* the parties were not entitled to a jury trial and consequently the findings of the court upon the facts are not conclusive upon appeal; but, upon the contrary, the court can re-examine the evidence when brought here by a bill of exceptions, determine the facts and upon those facts review the questions of law; *State* v. *Sengstacken,* 61 Or. 455 (122 Pac. 292, Ann. Cas. 1914B, 230). The custody of a child is always a proper subject of chancery jurisdiction: 22 Cyc. 519; and, while the proceedings by *habeas corpus* is in most jurisdictions classified as a legal and not an equitable remedy, and in this jurisdiction is to be classified as a special proceeding in the nature of an action, the Circuit Court can nevertheless exercise its chancery power in a proceeding by *habeas corpus;* but the proceeding itself must be conducted in the manner and form prescribed by the statute; 21 Cyc. 45. Although it is, not necessary to debate the question of whether or not a jury trial is never available, it is sufficient to say that it is plain that the parties to the instant proceeding were not entitled to a jury trial because the court was exercising its chancery jurisdiction; and therefore the findings made by the Circuit Court upon the facts are not conclusive: 21 Cyc. 324; 24 Cyc. 130; 12 R. C. L. 1250; 16 R. C. L. 205, 206.

In their answer the defendants plead that they are entitled to the custody of the child and they base their alleged right solely upon an agreement which they said they had with the petitioner. They also aver that the father abandoned the child, but the alleged abandonment appears merely as a conclusion from the allegation that the father agreed that the defendants could have the custody of the child. The judgment of the Circuit Court was apparently predicated upon the allegation and finding that the petitioner had made the

agreement relied upon by the defendants. The agreement pleaded by the defendants did not confer any right upon them. Although the precedents are not harmonious the better view is that an agreement like the one relied upon by the defendants is against public policy, and in contemplation of law, is no agreement at all. To hold that such an agreement has the force of a binding contract is to hold that a parent can barter and sell his child just as he could a chattel. The mere statement of the result ought to be enough to confute every argument that can be advanced in support of the validity of the agreement pleaded by the defendants. Although the petitioner denies that he made the alleged agreement, nevertheless if it be assumed that he did make the agreement, it did not confer any legal right upon the defendants; and if it did not vest a legal right in the defendants their whole claim fails, for the reason that their claim is founded entirely upon the alleged agreement. They do not allege in their answer that the petitioner is not a fit person to have the custody of the child nor was it contended or even suggested at the argument that the father was an incompetent person to rear his child. While the judgment contains a conclusion ''that it is for the best interests'' of the minor, yet there are no facts recited in the judgment upon which to base that mere conclusion. It is true that the court will always consider the welfare of the child, but it is also true that a parent who is of good character and a proper person to have the custody of the child and reasonably able to provide for it is entitled to the custody as against other persons: 29 Cyc. 1590. On the facts alleged in the answer and upon the findings of fact appearing in the judgment appealed from, the petitioner is entitled to a judgment here giv-

ing him the custody of his child.   The judgment appealed from should be reversed.

Mr. Justice Burnett concurs in the result of this opinion.