Argued February 17, affirmed April 1, petition for rehearing
denied April 29, 1953

# DENESSEN ET UX. *v.* TAYLOR

255 P. 2d 148

*Robert Mix,* of Corvallis, argued the cause and filed a brief for the appellant.

*C. S. Emmons* argued the cause for respondents. On the brief were Willis, Kyle and Emmons, of Albany.

Before LATOURETTE, Chief Justice, and WARNER, ROSSMAN and PERRY, Justices.

## LATOURETTE, C.J.

Plaintiffs, Glen Denessen and Dorothy Denessen, father and mother of Janet Arleana Denessen, by amended petition bring habeas corpus to recover custody of their daughter, a child seven years of age. The writ of habeas corpus under order of the court was issued by the clerk commanding the defendant to produce the child and to certify and return the time and cause of the retention of said child on a day certain.

Defendant Ana E. Taylor, maternal grandmother of Janet, filed a return to the amended petition and by affirmative defense transformed the case into equity and alleged that the mother of the child transferred the custody of the said child by writing to the grandmother on June 12, 1943, and since such time she has had the sole care of said child, providing support and

maintenance for her. She alleges that the plaintiffs are not fit and proper persons to have the custody of the child and have permanently and willfully abandoned her and that the welfare and best interests of the child will be subserved by allowing her to remain with the grandmother.

By reply plaintiffs generally denied the affirmative matters in the answer, excepting as to the transfer of the custody of the child by writing to the grandmother. The trial court found for the plaintiffs; hence this appeal.

Defendant in her first two points urges the insufficiency of the petition for habeas corpus and plaintiffs' failure to meet the burden of proof respecting the welfare of the child. When defendant filed her answer it was her belief that the burden of proof was on her to prove that the best interests of the child would be subserved if the child were permitted to remain with her since she alleged in her answer that the welfare of the child would be best served if she were allowed to have the custody of the child. We concur in this belief. The mother and father were the natural custodians of the child, and when they proved that the child was born in wedlock a prima facie case was made out entitling them to the custody of the child. To overcome this it then became necessary for the defendant to introduce evidence to sustain her answer.

To arrive at a proper solution as to who should have the custody of Janet, we must look to the record. Janet was born on April 25, 1943, shortly before the father, who was then in the United States Army, was transferred to California. Wishing to be with her husband, the 17-year-old mother decided to go to California and left the baby with the defendant who exacted the

following writing from her just as she was about to board a bus for California:

"I hereby give up all rights and custody of my daughter Janet Arleana Denessen to my mother Ana E. Taylor for ever.
"June 12, 1943.
"[signed] Dorothy Jean Denessen"

The above document has no legal efficacy "since a child is not a chattel, subject to sale or cold-blooded bargaining." *Turner v. Hendryx,* 86 Or 590, 596, 167 P 1019, 169 P 109.

The husband was transferred to various sections of the country, his wife following him. Finally he went overseas and returned from the Army in October, 1945. In the meantime his wife stayed with his parents in Chicago. The evidence shows that from October, 1945, until the Spring of 1948, the mother wrote to the defendant at least 15 times concerning the child, and in some instances requesting that the child be sent to her, she offering to pay transportation expenses. In one instance she sent defendant a registered letter stating that they would send the money for traveling expenses but no reply was forthcoming; in fact, the registered letter was refused. In the Spring of 1948, the father hitchhiked to Oregon to see the daughter but was unable to obtain the child since he was told he would have to get out a writ of habeas corpus. Defendant admitted that she would not have willingly given up the child. Later, in 1950, the father brought habeas corpus proceedings for the recovery of the child. His wife did not join in the petition. Defendant answered such petition denying petitioner's paternity of the child and attempted at the hearing to bastardize the child, claiming that the mother, while in her teens and living at home, was caused to become pregnant by a man other

than her husband. This hearing was continued, whereupon the mother joined in the amended petition.

It appears that the defendant had been married twice, once to John Holt, Dorothy's father, and later to James Taylor. Eight children were born to these unions. The defendant lives some 16 miles from Corvallis at the end of a county road. She and her sons run a small sawmill and live in cabins. While she was married to Holt, he went gunning for Taylor, whereupon Taylor requested asylum of the sheriff who placed him in jail for protection against Holt. The sheriff apprehended Holt, took his gun away from him, incarcerated him and released Taylor. Holt and the defendant were then divorced, and Taylor succeeded to Holt's marital bed via the marriage route.

There are numerous complaints made by the daughters of Holt, including Dorothy, that Taylor was molesting the girls, and on occasion the sheriff was called out to the home at night to look into the matter. He testified that the defendant on such occasion was not "too much concerned about it." Finally the authorities had Taylor brought to the courthouse for an investigation. Defendant accompanied him, took sides with him and denied the accusations.

During this period it appears that another daughter of defendant's and a sister of Dorothy's gave birth to an illegitimate child when she was in her teens. This child was also left with defendant who, as in the present case, refused to give up the child to its mother, whereupon habeas corpus proceedings were instituted. It seems that the defendant has a penchant for withholding her granchildren from their mothers which gives us some insight into her character.

There is further evidence that Dorothy's brothers attempted to molest her and her sister and that, upon

complaining to their mother, the girls were chastised for the same.

On the other side of the picture, to defendant's credit, two schoolteachers testified that Janet was doing well in school, was an average pupil, well-behaved and properly dressed, and that she appeared to be a healthy, normal child; however, to defendant's discredit in this regard, is the fact that she enrolled the child in school under the name of "Taylor" rather than under the name of "Denessen".

Let us now look to the situation concerning the home of the petitioners. After settling down subsequent to his war experience, Glen obtained a job in Chicago as a mail carrier, continuing as such for a period of about a year before institution of the proceedings at a salary of between $400 and $500 per month. He and Dorothy have had three children and they own a comfortable home in Chicago. There is not one iota of evidence against them other than that produced about their early lives and some marital trouble which they had in Chicago which was patched up and, so far as we are apprised, their present home life is above reproach.

As between the parties to this lawsuit, it is clear that the character of each of the petitioners equals, if not excels, that of the defendant. The serious question for us to decide is whether the best interests of the child would be met if she were removed to new surroundings, to the custody of what might be called strangers, from a home where she has spent all the years of her life in apparent happiness and contentment. We are rather handicapped in reaching a conclusion by the fact that we have not seen the witnesses and, particularly, the principals, nor heard them testify. On the other hand, the trial court was in that

enviable position and, after considering the matter, awarded the custody of the child to her parents.

■ This is a very close decision for us to make and not one where the evidence quite decidedly preponderates one way or another. Considering the testimony as a whole and the decision of the trial court, we are loathe to disturb the same. We believe that under the circumstances Janet will readily adjust herself to the new environment where she will have the tender care of her own mother and father and associations with her brothers and sisters.

■ At the hearing in this court it was stipulated among the parties that if the trial court's decision was affirmed no change in custody should become effective until after the conclusion of the current school year. We will abide by such stipulation.

Affirmed.