Argued February 11, reversed and remanded December 30, 1959, petition for rehearing denied February 23, 1960

# SCHULTZ *v.* FIRST NATIONAL BANK OF PORTLAND ET AL

348 P. 2d 22

*Gordon A. Ramstead*, Eugene, argued the cause for appellant. With him on the brief was Lynn Moore, Springfield.

*McDannell Brown*, Portland, argued the cause and filed a brief for respondent The First National Bank of Portland (Oregon).

Before McALLISTER, Chief Justice, and ROSSMAN, LUSK and WARNER, Justices.

**WARNER, J.**

This is one of the two proceedings wherein the same parties, Lester Henry Schultz is plaintiff and The First National Bank of Portland (Oregon), as executor of the last will and testament of Dorothea M. Schultz, deceased, and the heirs and devisees of Mrs. Schultz are defendants. Both cases were consolidated for purpose of argument here.[1]

This first proceeding was initiated in the Probate Department of the circuit court for Multnomah county, in the matter of the estate of Dorothea M. Schultz,

---

[1] The second case, entitled Lester Henry Schultz v. First National Bank of Portland et al. has been decided this date adversely to the plaintiff-appellant in that appeal in a separate opinion.

deceased, upon the petition of Schultz, seeking a determination of heirship pursuant to ORS 117.510 et seq.

Mrs. Schultz died without issue. The question presented here is whether the plaintiff is entitled to take the estate of Dorothea M. Schultz, as her sole, but pretermitted, heir. His claim to the status of an heir rests upon an alleged agreement to adopt him made by the decedent and her former husband in the state of Nebraska.

The pertinent, and only, allegations of the petition bearing on the adoption agreement read:

"IV.

"* * * That the said Dorothea M. Melcher and Edward T. Schultz were duly married at Wisner, Nebraska, on March 15th, 1911, and thereafter resided at Bonesteel, South Dakota until the parties were duly divorced on or about October the 15th, 1938, a period of over 27 years. That subsequent to the said divorce, the deceased, Dorothea M. Schultz, resided in Newport, Nebraska for about a year and a half and then moved to Portland, Oregon, in 1939, where she resided until the time of her death on or about November 29th, 1954.

"V.

"That on or about November, 1923, the deceased, Dorothea M. Schultz and her husband, Edward T. Schultz, made application to the Evangelical Lutheran Orphan's Home in Freemont, Nebraska, for a child to be adopted by them, and said Dorothea M. Schultz and her husband, Edward T. Schultz, were given your petitioner, who was born Lester Stoffer in Norfork, Nebraska, on April 7, 1919, as a child for adoption.

"VI.

"That the deceased, Dorothea M. Schultz, and her husband, Edward T. Schultz, did from the time that they took your petitioner from the said home

on the agreement to adopt the said child, they retained your petitioner in their home, gave him their name 'Schultz', and to all intents and purposes considered your petitioner their natural child, and all of the relationship of parents and child were carried out and continued by the deceased, Dorothea M. Schultz, and her husband, Edward T. Schultz, toward your petitioner, the said child, your petitioner, considering himself to be the natural child of the said Dorothea M. Schultz and Edward T. Schultz and gave to his adoptive parents all of the love and affection and privileges that would be accorded to the natural parents, and your petitioner considered himself for all intents and purposes to be the child of said parents since having been taken from the orphan's home."

■ This is not a suit for breach of contract, nor is it, strictly speaking, one for specific performance. It is a proceeding for the judicial determination whether status as an heir can be said to flow from the alleged agreement. In short, it stands as a petition to the court to apply to the agreement the equitable maxim treating as done that which parties intended should be done, namely, a consummation of the adoption of plaintiff as a son and heir of the Schultzes. 19 Am Jur 315, 316, Equity §§ 455, 457; *Syverson v. Serry*, 101 Or 514, 529, 200 P 921; *Ruth v. Cox*, 134 Or 200, 207, 291 P 371. See, also, *Wooley v. Shell Petroleum Corp.*, 39 NM 256, 45 P2d 927, 931; *Tuttle v. Winchell*, 104 Neb 750, 178 NW 755, 757; and *Wiseman v. Guernsey*, 107 Neb 647, 187 NW 55, where the maxim is applied to like agreements of adoption made in a foreign state.

Plaintiff appeals from the order of the court dismissing his petition.

■ The motion of the defendant bank, denominated a "Motion to Strike Petitioner's Second Amended Peti-

tion," indicates that it was both a motion and a demurrer and recited:

> "1. That it fails to allege facts sufficient to entitle the petitioner to the standing of an heir or next-of-kin of the testatrix, Dorothea M. Schultz; and
>
> "2. That the said second amended petition alleges no new or additional facts not set forth in petitioner's amended petition, which petition was stricken out upon motion and after hearing thereon."

Although captioned a motion, when its content also tests the petition's legal sufficiency, and the trial court treats it as a general demurrer, we will do likewise. *Bliss v. Southern Pacific Co.*, 212 Or 634, 637, 321 P2d 324.

The order of dismissal does not reveal upon what ground the court premised its action in sustaining the demurrer.

The briefs of the parties are meager in argument and citations, offering little aid in this respect. Because of what is there said concerning the nature of the contract; that is, as an agreement for adoption having its origin in a foreign jurisdiction, we are led to the conclusion that this was probably the question giving the court its real concern and the sole matter argued in the probate court. The bank's position is that foreign agreements of this character will not be enforced by Oregon courts. The plaintiff argues to the contrary. If the bank found any other alleged elements of insufficiency in the pleading it failed to suggest them.

The statute (ORS 117.510 to 117.560, inclusive) upon which the plaintiff relies for a determination of his status as an heir of Dorothea M. Schultz is a special

statute, providing an adequate, though not the exclusive, remedy for a simple and expeditious determination of questions of heirship within the ambit of every probate proceeding and as a matter collateral to the ultimate settlement and distribution of any given estate. It confers jurisdiction on the probate court for such a determination and lays out with great particularity the precise procedure to be followed.

Up to this time only three cases have come to this court which had their origin under these sections of the code: *In re Norton's Estate*, 175 Or 115, 151 P2d 719; *Kelley v. Kelley*, 210 Or 226, 310 P2d 328. More significant to this appeal is a third and relatively recent case, *In re Estate of Myers*, 197 Or 520, 254 P2d 227 (1953). This last case was a proceeding under the special statute wherein plaintiff claimed to be the sole heir of an intestate decedent by reason of decedent's adoption of plaintiff and wherein the defendants contended that plaintiff had later been adopted by other parties. The issue was the validity of the second adoption decree.

Statutes of this character offer a method of determination which has commended itself to many other states. 26A CJS 711, Descent & Distribution § 79; 16 Am Jur 830, Descent and Distribution § 61. And under statutes similar to ours, we find the courts in other states exercising jurisdiction to determine the status of parties who claim heirship by reason of an incomplete agreement to adopt, as does the plaintiff in this matter. *In Re Radovich's Estate*, 48 Cal2d 116, 308 P2d 14 (1957); *Johnson v. Superior Court*, 102 Cal App 178, 283 P 331 (1929); *In re Garcia's Estate*, 45 NM 8, 107 P2d 866 (1940).

We will first take note of the provisions of ORS

117.510(2), (3) and (4) which specify the content of the petition and so far as pertinent to our consideration read as follows:

"(2) Any person claiming to be an heir of the deceased, or to be entitled to distribution, in whole or in part, of such estate may, as plaintiff, thereupon file a petition in the matter of such estate, *setting forth with reasonable particularity the facts constituting his claim of heirship* or interests, as distributee. * * * The date and place of birth of the decedent, and the names of his parents, if known to the plaintiffs, shall be stated in the petition, together with such facts as are known to the plaintiffs respecting his past residence, and the full name, age, birthplace, residence and relationship to the deceased, of each plaintiff, shall be given therein; and the *petition shall set forth facts sufficient to show that prima facie each plaintiff is entitled to be declared an heir or distributee* of a share in the estate and the proportionate share to which he is entitled. * * *

"(3) Any persons who have not joined as plaintiffs in the petition, but who appear from the facts therein stated to have or claim rights as heirs or distributees, * * * shall be made defendants. It shall be stated also in the petition that none of the plaintiffs knows of any person not made a party therein who is or claims to be an heir or distributee of such estate. The name, age, residence and relationship to the decedent of each defendant shall be stated in the petition or otherwise it shall be stated therein that the same is not known to the plaintiffs, or any of them, and that the plaintiffs have not been able to ascertain the same by reasonable diligence.

"(4) The petition shall also be directed against all persons unnamed or unknown having or claiming any interest in such estate as heirs or distributees, and they shall be designated as defendants therein. * * *" (Emphasis ours.)

■ No matter how sufficient the pleading may be as a pleading of a contract under Oregon law, it must, nevertheless, be declared vulnerable if the foreign contract is invalid or unenforceable in the jurisdiction where executed. or, even though a valid contract in the state where made, it would be invalid in Oregon as offensive to our moral standards or here regarded as injurious to the public welfare.

■ Notwithstanding that the lex loci bearing on the enforcement of this kind of contract is not here pleaded, we will, under the authority of ORS 41.420 and 41.430 (The Uniform Judicial Notice of Foreign Law Act) take notice of the foreign law as far as may be necessary to resolve the question.

Plaintiff argues that the laws of Nebraska, where the contract was made, and the laws of South Dakota, "where the contract was to be performed," allow a person in his position to enforce his alleged right against the estate of a foster parent, and further represents that the laws of either state are equally applicable in solution of the problem presented. But we find nothing in the agreement as pleaded to warrant the conclusion it was in the contemplation of the parties that formal application for adoption was to be made and consummated in the state of South Dakota instead of Nebraska.

We, therefore, content ourselves with examining the applicable law of Nebraska for the determination of the validity and enforceability of the instant agreement in that state, if plaintiff had there sought the relief he seeks here and his foster mother had died leaving an estate in that state.

■ We observe before going further that the contract as pleaded enjoys two presumptions. The first is in favor of its legality and that the parties made the

agreement with relation to the laws governing it. 17 CJS 1226, 1227,. Contracts §§ 585, 586; 12 Am Jur 744, Contracts § 224; *Oregon Growers' Etc. Assn. v. Lentz*, 107 Or 561, 582, 212 P 811. The other favors presumption of regularity as to the capacity of the parties to contract. 17 CJS, supra, 1222 § 584. This extends to the acts of a corporation. 13 Am Jur 782, Corporations § 750.

In Nebraska, we find no controlling statute, but do find a long line of decisions from its highest judicial tribunal which give confirmation to plaintiff's contentions respecting the validity of such contracts in that state and the readiness of its courts to enforce them.

The doctrine relied upon by plaintiff was first promulgated in 1894. *Kofka v. Rosicky*, 41 Neb 328, 59 NW 788. And as far as our research discloses has been consistently followed ever since without modification or revocation. See *Pemberton v. Pemberton*, 76 Neb 669, 107 NW 996; *Peterson v. Bauer*, 83 Neb 405, 119 NW 764; *Milligan v. McLaughlin*, 94 Neb 171, 142 NW 675; *Tuttle v. Winchell*, supra; *Franks v. Horrigan*, 120 Neb 1, 231 NW 27; *Wiseman v. Guernsey*, supra; *Nielson v. Kammerer*, 123 Neb 57, 257 NW 534.

This fidelity to the rule in Nebraska does not conclude our inquiry for we must also consider the impact of the enforcement of rights arising under the rule there in relation to the public policy of this state.

Under the strict doctrine established by *Furgeson v. Jones*, 17 Or 204, 20 P 842, and consistently adhered to over the years, an agreement of the character under review would be invalid and unenforceable if made in this jurisdiction. See to the same effect *Long v. Dufur*, 58 Or 162, 170, 113 P 59; *Williams v. Capparelli*, 180 Or 41, 44, 175 P 2d 153; *In re Estate of Myers*, supra; *Whetmore v. Fratello*, 204 Or 316, 322,

282 P2d 667. Cf. *Turner v. Hendryx,* 86 Or 590, 595, 167 P 1019, 169 P 109; *Denessen v. Taylor,* 198 Or 347, 349, 255 P2d 148; *Fox v. Lasley,* 212 Or 80, 93, 318 P2d 933.

■■ The invalidity of the agreement had it been made in Oregon does not, however, necessarily relieve the courts of this state from enforcing rights arising under a similar agreement if valid in a sister state unless to do so would clearly be contrary to our stated public policy. In the classic case of *Loucks v. Standard Oil Co. of N. Y.,* 224 NY 99, 120 NE 198, Judge Cardozo lays down rules on this subject enabling us to determine when the law of the foreign jurisdiction is so opposed to the public policy of the local forum that it will warrant our courts in refusing to enforce it. One of the persuasive statements in Loucks is found at p 202, and reads:

> "* * * The courts are not free to refuse to enforce a foreign right at the pleasure of the judges, to suit the individual notion of expediency or fairness. They do not close their doors, unless help would violate some fundamental principle of justice, some prevalent conception of good morals, some deep-rooted tradition of the common weal."

The Loucks case has been cited twice by this court with approval: *McGirl v. Brewer,* 132 Or 422, 447, 280 P 508, 285 P 208; *Bowles v. Barde Steel Co.,* 177 Or 421, 435, 164 P2d 692, 162 ALR 328. Cf. *Williamson v. Weyerhaeuser Timber Co.,* 221 F2d 5, 11 (9th CA 1955).

■ Can we say that because a contract for adoption would be invalid in Oregon that its enforcement would be so offensive to our deeply-rooted public policy that we should refuse to enforce it here, even though valid under the laws of a sister state? The nub of the

Oregon rule emphasizing strictness is that adoption can only be accomplished by compliance with the statutory scheme. The Nebraska rule in conflict recognizes that an *agreement to adopt* in accordance with the statutory procedures of that state may give rise to a de facto adoption status which the courts of that state will ripen into a de jure status when properly presented. As pointed out in *McGirl v. Brewer*, supra, there must be something more than a statute prohibiting such contracts before our courts will be justified in declining to enforce a foreign agreement. "* * * there must be something which offends by shocking moral standards, or is injurious or pernicious to the public welfare." (132 Or, supra, at 447) This is the gist of the rule we take from Loucks, supra, and when applied in test to the instant Nebraska contract, we are forced to conclude that the contract as described in the petition contains nothing which violates any fundamental principle of justice, or prevalent conception of good morals or any deep-rooted tradition of the common weal in this state. *Loucks v. Standard Oil Co. of N. Y.*, supra (120 NE at 202).

Finding the petition sufficient and invulnerable to defendant's demurrer, the order of the lower court is reversed and the matter remanded for such further proceedings as may be appropriate.

ROSSMAN, J., dissents.