Dissenting Opinion by
Packel, J.:
The promotion of freedom of the people by the prohibition of the use of evidence obtained by unconstitutional police action is the essence of the exclusionary rule. If the application of the rule results at times in the avoidance of the conviction of an adult in order to safeguard constitutional rights of the public, there is just as much reason for the application of the rule, even though it may result at times in the avoidance of an adjudication of delinquency of a juvenile.
On this appeal, a mentally retarded juvenile, represented by a voluntary defender, challenges the admissibility of his oral statement to the police that was used against him at trial, and was the only evidence connecting him with the charges. His position is that the statement was not admissible because it was “tainted fruit” of an illegal arrest and that the taint was not purged by the Commonwealth’s claim of a valid waiver of his Miranda rights.[1]
On January 8, 1971, a pharmacist and his assistant were beaten and robbed by three unknown males.[2] Almost six weeks later the police received an anonymous phone call from a young person who said that one of *69 the participants was named “Primo” and that he lived in a certain area in Philadelphia. Two days later appellant, known to the police as “Primo,” was arrested without a warrant. He was taken directly to the station house and placed in a locked interrogation room. He remained there alone for between one and two hours until a detective arrived who advised Mm of his rights by reading from the standard police interrogation card. After approximately one-half hour of questioning, appellant gave an oral statement admitting his involvement in the robbery.
At the time of the interrogation, appellant was a few days away from his seventeenth birthday. A defense witness testified that he had an I.Q. of 66 based upon tests given by psychologists appointed by the school board and that he was attending a school for retarded educable students.
It is well settled that the Constitution in its protection of the rights of the people prohibits the arrest of a person unless the arresting officer has probable cause to believe that a crime has been or is being committed by that person. Carroll v. United States, 267 U.S. 132, 45 S. Ct. 280 (1925); Beck v. Ohio, 379 U.S. 89, 85 S. Ct. 223 (1964); Commonwealth v. Goslee, 427 Pa. 403, 234 A. 2d 849 (1967). Furthermore, the police may not make a warrantless arrest unless the facts within their knowledge would have justified the issuance of a valid warrant. McCray v. Illinois, 386 U.S. 300, 87 S. Ct. 1056 (1967); Whiteley v. Warden, 401 U.S. 560, 91 S. Ct. 1031 (1971). When probable cause for a warrantless arrest is based upon hearsay information supplied by an informant, the officer, like a magistrate, must make an independent determination that the informant is reliable and that his conclusion is buttressed by articulable facts rather than mere suspicion. Aguilar v. Texas, 378 U.S. 108, 84 S. Ct. 1509 *70 (1964); Spinelli v. United States, 393 U.S. 410, 89 S. Ct. 584 (1969).
In the present ease the appellant was taken into custody solely upon the basis of a telephone tip to the police from an unidentified informant. There is no indication in the record that the caller was an eyewitness to the crime or had any personal knowledge of it whatsover. At no time during the suppression hearing or trial did the arresting officers reveal any facts or circumstances which led the informant to his conclusion that “Primo” had committed the robbery. Upon this record the arrest was clearly illegal. Commonwealth v. Holton, 432 Pa. 11, 247 A. 2d 228 (1968).[3]
The next consideration is whether appellant’s subsequent oral statement was tainted by the illegal arrest and, therefore, inadmissible against him. The leading case involving this issue is Wong Sun v. United States, 371 U.S. 471, 488, 83 S. Ct. 407, 417 (1963), in which the Supreme Court stated the relevant test to be: “. . . ‘whether, granting establishment of the primary illegality, the evidence to which instant objection is made has been come at by exploitation of that illegality or instead by means sufficiently distinguishable to be purged of the primary taint.” [citation omitted]. In Commonwealth ex rel. Craig v. Maroney, 348 P. 2d 22, 29 (3d Cir. 1965), cert. den., 384 U.S. 1019 (1966), the Third Circuit Court of Appeals noted two specific factors of major significance in determining the rela *71 tionsMp between an illegal arrest and subsequent confession: “(a) the proximity of an initial illegal custodial act to the procurement of the confession; and (b) the intervention of other circumstances subsequent to an illegal arrest which provide a cause so unrelated to that initial illegality that the acquired evidence may not reasonably be said to have been directly derived from, and thereby tainted by, that illegal arrest.”
In the present case the proximity between the illegal arrest and appellant’s statement was extremely close — within one or two hours. Between arrest and confession, however, appellant was advised of his constitutional rights as required by Miranda, v. Arizona, 384 U.S. 436, 86 S. Ct. 1602 (1966). The police detective who took the statement read the standard warnings to him from a printed card. The Commonwealth contends that appellant knowingly waived his rights and that this voluntary act “purged the taint” of the initial illegality. I cannot agree that under the attendant circumstances this event, taking place within an hour or two after the illegal arrest, was such a supervening cause as to require a disregard of the violation of the Constitution.
The confession in this case was giveu by a sixteen year old juvenile with an I.Q. of 66 and a mental age of less than 12. In Haley v. Ohio, 332 U.S. 596, 601, 68 S. Ct. 302, 304 (1948), the Supreme Court of the United States held the confession of a fifteen year old boy to be involuntary and observed: “But we are told that this boy was advised of Ms constitutional rights before he signed the confession and that, knowing them, he nevertheless confessed. That assumes, however, that a boy of fifteen, without aid of counsel, would have a full appreciation of that advice and that on the facts of this record he had a freedom of choice. We cannot indulge those assumptions. Moreover, we *72 cannot give any weight to recitals which merely formalize constitutional requirements. Formulas of respect for constitutional safeguards cannot prevail over the facts of life which contradict them. . . .” See, also, Gallegos v. Colorado. 370 U.S. 49, 82 S. Ct. 1209 (1962).
The burden is upon the Commonwealth to establish waiver of fundamental constitutional rights, and courts indulge every reasonable presumption against such waiver. Johnson v. Zerhst, 304 U.S. 458, 58 S. Ct. 1019 (1938). Considering appellant’s age and seriously impaired mental capacity, it would be highly artificial and contrary to human experience to hold that his statement was given voluntarily with a full understanding of his rights. I am in agreement with the view expressed by Justice Roberts in Commonwealth v. Darden, 441 Pa. 41, 53, 56, 271 A. 2d 257, 264 (1970),[4] that a mentally retarded juvenile “. . . deserves more protection than that given by a cold recitation of the Miranda warnings.” As Justice Roberts stated in his dissenting opinion in that case: “This is not an easy case, but I am compelled to conclude that this defendant did not make a knowing and intelligent waiver of his constitutional rights sufficient to sustain the validity of his confession. I take little comfort from the fact that the Miranda warnings were given. I do not believe that this defendant was truly capable, *73 even given the knowledge gained by having heard the warnings recited, of making the free and rational choice which is a prerequisite of a valid confession.”[5]
It must be remembered that the police had already violated appellant’s rights when the damaging disclosure was made in this case. He had been illegally arrested less than two hours before he gave his incriminating statement. For the reasons set forth above, I conclude that appellant did not voluntarily and intelligently waive his Miranda rights. In any event, the confession obtained was a direct product of the unlawful arrest under the circumstances of this case and should have been suppressed as “fruit of the poisonous tree.” Commonwealth ex rel. Craig v. Maroney, supra; Wong Sun v. United States, supra.[6]
The order of the court below should be reversed and a new trial granted.
Hoffman and Spaulding, JJ., join in the dissent.

 Appellant properly raised these issues below at a pretrial suppression bearing. He, also, contends on appeal that he was advised of his Miranda rights too late to effectively exercise them. He argues that he should have received the warnings immediately after being taken into custody rather than before formal questioning began.

 Neither victim was able to identify appellant as one of his assailants.

 The instant case is unlike Commonwealth v. Bosurgi, 411 Pa. 56, 190 A. 2d 304 (1963), relied upon by tbe Commonwealth. In that case, one day after the burglary of a jewelry store, an informant gave the police a description of an individual who was selling watches in a taproom in the vicinity of the crime. The “tip” in the instant case was received six weeks after the robbery and contained no indication whatsoever of its reliability. Furthermore, it is uncertain how much precedential value Bosurgl retains in the light of Aguilar and Spinelli, supra.

 In Darden, supra, the Court upheld a confession given by a 15-year old with an I.Q. of 76 after he had received his Miranda warnings. It should be noted that the trial court had characterized the boy as “remarkably alert, aware and responsive.” The legality of the arrest was not challenged in that case and, consequently, there was no consideration of the taint issue. The Commonwealth, also, relies upon Commonwealth v. Bishop, 425 Pa. 175, 228 A. 2d 661 (1967), cert. den., 389 U.S. 875 (1967). That case is inapposite because the confession there was not made by a mentally retarded juvenile — the fact of critical importance in the instant case.

 It is true tliat upon cross-examination at the suppression hearing, the District Attorney repeated each Miranda warning to appellant, asked if he understood the questions and appellant responded affirmatively. When defense counsel attempted to explore the extent of appellant’s understanding more fully upon redirect examination, however, he was foreclosed by the trial court Under the circumstances of this case the waiver issue demanded an especially careful, extensive inquiry. Thus, I am no more persuaded by the perfunctory on-the-record colloquy as evidence of a valid waiver than by the police detective’s testimony in that regard.

 For a general discussion of the taint issue see Kamisar, Illegal Searches or Seizures and Contemporaneous Incriminating Statements: A Dialogue on a Neglected Area of Criminal Procedure, 1961 U. Ill. L. For. 78; Pitler, “The Fruit of the Poisonous Tree” Revisited and Shepardized, 56 Calif. L. Rev. 579 (1968) ; Ruffin Out on. a Limb of the Poisonous Tree, 15 U.C.L.A. L. Rev. 32 (1967).