Mary Ann McKeown, Appellee, v. W. C. Brown, State Treasurer et al., Appellants.

**Evidence:** PROOF OF HEIRSHIP. Heirship may be established by the best evidence obtainable though not of the highest rank or order. Thus where a non-resident alien sought to prove that she was the sole surviving heir of a decedent, her testimony tending to so show, corroborated in a material degree by that of an early family acquaintance and numerous other later circumstances, there being no adverse claimant and no denial of her testimony, which was consistent, the court was justified in establishing her claim.

**Collateral inheritance tax:** PROPERTY OF NON-RESIDENT: TREATIES. In view of the treaty relations between this government and Great Britain, no greater inheritance tax can be assessed against the property of a non-resident subject of that country than may be imposed in like cases upon the property of citizens of this country, which is five per cent.

**Same:** TREATY WITH GREAT BRITAIN: CONSTRUCTION. Title to the real property of a decedent vests immediately upon his death in his heirs, subject only to a sale by the administrator to pay debts; and a sale for that purpose and conversion of the property into money

in no way affects the right to impose an inheritance tax. This is the contemplation of the treaty between this country and Great Britain, which provides that a citizen of either country acquiring real property by inheritance in the other country, may sell the same and withdraw the proceeds, exempt from any charges or duties other than those imposed in like cases upon citizens of the country from which the funds are withdrawn.

**Same:** ESCHEATS: RECOVERY OF ESTATE PROPERTY. Payment to the state of the proceeds of estate lands claimed by a resident of Great Britain because of the absence of any claimant to the fund, and within the ten years allowed by statute, did not operate to render the treaty provisions on the subject inapplicable, on the theory that title to the property did not pass to the heir, but that by the sale it lost its character as real property and escheated to the state; as the state held the fund as a depository for the ten years during which it might be claimed by an heir, rather than as absolute owner.

**Same:** RECOVERY OF ESCHEATED PROPERTY: ACTION AGAINST STATE OFFICER: WAIVER. An action against a state officer under some circumstances amounts to an action against a state, which is forbidden by statute; but where the state has by statute recognized the right of an heir to recover funds belonging to an estate to which he was entitled, after it had been paid over to the state by the administrator, by necessary implication it becomes the duty of the officer having control of the fund to pay it over to the person showing himself entitled thereto; and the court has authority to enter an order against such officer directing performance of the duty. Where, however, the state voluntarily appeared and filed answer to plaintiff's claim upon its merits, it waived the right to deny consent to the jurisdiction of the court.

**Same:** COSTS. The costs in a proceeding by an heir to recover escheated property from the state officers having the custody of the fund should be taxed to the claimant.

*Appeal from Franklin District Court.*—HON. R. M. WRIGHT, Judge.

SATURDAY, NOVEMBER 28, 1914.

THE opinion sufficiently states the case. *Affirmed* in part, and *modified* in part.

*George Cosson*, Attorney General, *C. A. Robbins*, Assistant Attorney General, and *Sherwood A. Clock*, for appellants.

*John M. Hemingway*, and *John J. Dwyer*, for appellee.

Weaver, J.—One James Murray, a resident of Franklin county, Iowa, died intestate March 1, 1908, and S. Y. Eggert became the duly qualified administrator of his estate. After paying all proved claims and charges, there was left in the administrator's hands, for distribution, the sum of $7,853.99. No person being found entitled to receive said fund as an heir of the deceased, it was adjudged to be an escheat to the state, and an order was entered by the district court, under date of November 22, 1910, directing the administrator to pay over to the treasurer of state the entire unexpended remnant of the estate. Pursuant to said order the administrator did on April 21, 1911, pay to said treasurer the full sum of $7,853.99. On October 9, 1911, the plaintiff herein, Mary Ann McKeown, filed a petition in the district court setting up the facts above recited, alleging that she was and is the sole heir of the said James Murray, and as such entitled to have and receive the entire estate left by him, subject only to the proper charges and expenditures necessary to the settlement thereof. To this proceeding she made the treasurer of state and the auditor of state defendants, alleges that she is informed and believes that the treasurer has paid the funds derived from said estate into the hands of said auditor, who has present possession thereof; and upon the showing thus made she asks a decree requiring said defendants to make accounting of the moneys so received, and that they be ordered to pay the same into the office of the clerk of the district court, or to such other person as the court may direct, for her use and benefit, and for such other order or judgment as may be just and equitable in the premises. The treasurer appeared to this proceeding, and after filing a motion to dismiss, which is not shown to have been ruled upon, answered that, acting under authority of

law and upon the order of state auditor, he had distributed and delivered the money received from the Murray estate in varying sums to the county auditors of Adair, Ringgold, Howard, and Story counties, and is now without possession or control thereof, and has no moneys or available funds in his hands with which to meet or discharge the plaintiff's demands. He also asks affirmatively that, in case plaintiff is found entitled to the return of the money, an inheritance tax, as provided by law, be assessed thereon. Though the state does not seem to have been made defendant in the action, it enters an appearance by its Attorney General and files an answer in denial to the petition. Upon the issues thus joined, there was a trial to the court. The evidence fairly tends to show that the plaintiff is a nonresident alien and subject of the kingdom of Great Britian, and that she is the cousin and only surviving heir of the said James Murray, deceased. The trial court found that plaintiff had duly established her right and claim to be the sole heir of the said James Murray and entitled to judgment for a return of the money of said estate, as claimed in the petition, but assessed thereon, in the favor of the state of Iowa, a collateral inheritance of twenty per cent. And it further appearing that the said fund had, by the joint action of the state treasurer and state auditor, been distributed to the several counties named in the answer, the said officers were authorized and directed to recover and withdraw from said counties the moneys so distributed and pay the same (less the inheritance tax allowed) into the hands of the clerk of the trial court for the benefit of plaintiff, or to make such payment from any other fund properly and lawfully applicable thereto. From this judgment the defendants have appealed. The plaintiff also appeals from so much of said judgment as assesses upon the estate an inheritance tax in excess of five per cent.

The propositions argued upon the behalf of defendants are as follows:

I.   That plaintiff does not sufficiently establish her status or right as the only heir of James Murray.  We shall not attempt any general recital of the evidentiary facts.  The plaintiff is herself a woman of advanced years, and much of that which she shows of her own knowledge and recollection has reference to facts occurring and conditions existing far back in her history, and is involved in some degree of obscurity and uncertainty.  This is inevitable in almost every effort to trace family history and genealogy over a period of a half century or more.  Such cases, perhaps more frequently than any others, call for an application of the familiar rule that, where evidence of the highest rank or order is not found, resort may be had to the best evidence obtainable.  1 Elliott's Evidence, sections 360, 362, 374, 375.

1. EVIDENCE: proof of heirship.

The story told by plaintiff is to a material extent corroborated by a witness having some personal acquaintance with the family many years ago and various corroborating circumstances of later occurrence.  No one appears to dispute her right of inheritance; there is no rival claimant; no witness is called to deny the truth of any statement; and there is nothing inherently incredible or suspicious in her story.  We think the conclusion reached on this point by the trial court is amply justified.

II. Next in order of presentation by counsel is the question concerning the assessment of a collateral inheritance tax.

The plaintiff concedes the liability of the estate to a tax of this kind, but insists that the tax properly chargeable is five per cent., and no more, instead of twenty per cent., as allowed by the court.  The inheritance tax statute (Code, Supp. 1907, section 1467), after providing generally for a tax upon property passing by will or inheritance to others than the immediate and direct heirs of deceased persons and fixing the rate of such levy at five per cent., adds thereto the following:

2. COLLATERAL INHERITANCE TAX: property of non resident: treaties.

Where property or any interest therein shall pass to heirs, devisees or other beneficiaries as contemplated in the foregoing provisions who are alien nonresidents of the United States, the same shall be subject to a tax of twenty per centum of its true value.

Were this all to which we are required to look, we should have no difficulty in affirming the assessment made by the trial court, but plaintiff makes the point that, under the treaty existing between this nation and Great Britain, the provision in our statute discriminating against nonresident aliens has no application, and she is bound to pay no more than would have been required of her had she been a resident of this state. It is elementary that treaty provisions between the United States and a foreign nation have force and effect paramount to acts of state legislation, and, if the treaty which the plaintiff invokes does prohibit the discrimination of which she complains, it is our duty to respect such limitation upon the power of the state and hold that this estate is liable to a charge of five per cent. and no more. The treaty provision to which we must look reads as follows:

When on the death of any person holding real property (or property not personal) within the territories of one of the contracting parties, such real property would, by the law of the land, pass to a citizen or subject of the other, were he not disqualified by the laws of the country where such real property is situated, such citizen or subject shall be allowed a term of three years in which to sell the same, this term to be reasonably prolonged if circumstances render it necessary, and to withdraw the proceeds thereof, without restraint or interference, *and exempt from any succession, probate or administrative duties or charges other than those which may be imposed in like cases upon the citizens or subjects of the country from which such proceeds may be drawn.*

It is proper in this connection to further state that the property left by James Murray at his decease consisted of

both personalty and realty, and that, the personalty proving
insufficient to discharge all the claims the
land was sold by the administrator, under
order of court, for that purpose. The money
turned over to the state treasurer was therefore the proceeds
of the sale of the land, less such part thereof as had been re-
quired for the payment of debts. The rights of the plaintiff
in the property of which the intestate died seised and pos-
sessed were fixed upon his death, and the title to the land
passed at once to her, subject only, upon exhaustion of the
personal estate, to sale by the administrator to provide the
means for the payment of claims and charges. It follows, for
the purpose of applying the treaty to this case, that the prop-
erty inherited by plaintiff was real estate, and its subsequent
sale and conversion into money does not in any way affect the
charge or tax which the statute places upon her right of in-
heritance. The material part of the treaty provision above
quoted is neither ambiguous nor obscure. To any reader
having acquaintance with the ordinary and approved usage of
our language, they suggest at once the purpose and intent of
the contracting parties to eliminate and forbid all discrimi-
nation between the subjects of the contracting governments
with respect to the right of inheritance of real property, sub-
ject only to the authority of the government, having juris-
diction of the property so passing by inheritance, to require
its sale within a reasonable period, which shall not be less than
three years.

*3. Same: treaty with Great Britain: construction.*

In avoidance of this conclusion, it is argued by counsel
for appellant that the case before us is not covered by the
quoted provision of the treaty. The conten-
tion is that the title to the land did not pass
to the plaintiff upon the death of James Mur-
ray, but by escheat to the state of Iowa. Stated in counsel's
own language, the proposition is as follows:

*4. Same: escheats: recovery of estate property.*

This estate escheated. While under other circumstances
the title to real property passes instanter from deceased, at the

time of his death, to his heirs or beneficiaries, in this case, while the title would have vested upon the death of James Murray in this plaintiff, if she had claimed it and had proven her relationship, by her negligence, as we might term it, the title was allowed to pass into the state of Iowa. The state of Iowa acquired absolute title to the property in question, but the Legislature, in its goodness, grants the right to any one to recover the same within a period of ten years, upon proper proof. The law of escheat compels the sale of all property and the converting of same into money, so it is her contention that in all instances of escheat the title legally and equitably passes to the state of Iowa, and, being money, it absolutely loses its real nature and becomes personal property. So that, in the case at bar, the title to the property in question had vested in the state of Iowa, and the same was personal property.

We think the argument unsound, and that the failure of the plaintiff to discover and assert her right as heir until after the fund arising from the sale of the land had been ordered paid over to the state treasurer could not have the effect to change the elementary rule that, upon death of its owner intestate, the title to his lands vests at once in the heir, assuming, of course, there be an heir in existence. In the final sense of the word there was no escheat. It is true a judgment or order of escheat was entered, but, as we may use that expression, the escheat was tentative only, and the right of the heir to appear and have such order set aside and his own right and title confirmed would not be foreclosed or lost. Under our statute, only property "remaining uninherited" escheats to the state. Code, section 3387. If, after due notice given, no one appears within six months to claim the estate, the property may be ordered sold, and the proceeds, under the direction of the state auditor, paid over by the administrator for the benefit of the school fund. Code, sections 3389, 3390. Such money is to be surrendered and paid over "to any one showing himself entitled thereto" at any time within ten years and not afterwards. Code, section 3391. It will be noticed that the

statute requires no judgment of condemnation of final adjudication that the property "remains uninherited." The one condition for the payment of the money into the school fund is that due notice has been given and a period of six months has elapsed without the appearance of any claimant thereto. The presumption therefrom that no heir exists is at best a rebuttable one, until the expiration of the ten-year limitation. Until then the title of the state to the fund is that of a depositary rather than absolute owner. Until that period has elapsed, the officer having possession or control of the money holds it subject to the right of "any one showing himself entitled thereto" to demand and receive the same "at any time within ten years." Not until then is the title of the heir eliminated and the possessory right of the state ripened into absolute ownership. The plaintiff did appear within a few months after the order was entered for payment of the money into the school fund, and has established her identity as the heir of the deceased, and is therefore entitled to a repayment of the money.

The conclusions announced herein are in no manner inconsistent with the views expressed by us in *Anderson's* case, 147 N. W. (Iowa) 1098. We had there to consider a provision of the treaty with Denmark, by which discrimination in taxes upon property and property rights was forbidden. We held that our collateral inheritance tax is not a tax on property or property rights, but is rather a charge or tax or duty upon the succession or transmission of property occasioned by death of the owner, or "a tax upon the passing of legacies or distributive shares," and that a discrimination therein between citizens and non-resident aliens was not prohibited by that treaty. But the treaty with Great Britain, with which we now have to deal, expressly enumerates succession duties as one of the charges upon which no discrimination can be allowed.

III. It is objected, however, that this proceeding is in the nature of a suit against the state of Iowa, and that the court

cannot properly entertain an action against a state without its consent. Counsel says that even conceding that defendant has established her right as the heir of Murray, as contemplated by the statute, yet the court can afford her no remedy, and she can secure a return of her money only by an act of the Legislature. In other words, it is insisted that she has no enforceable remedy, but must depend entirely upon the grace or whim of the law-making body. We think the exemption of a state from liability to be sued is not here applicable. It is true that, under some circumstances, an action against a state officer is held to be in substance an action against the state, and therefore forbidden. But where the law imposes a duty upon a state officer and his refusal or failure to perform it affects injuriously the personal or property right of an individual, it cannot be that the court is without power or authority to administer an appropriate remedy. To so hold is to make every administrative officer a law unto himself and open the door to grave abuses. Now the state, acting through its Legislature, has recognized and confirmed the right of an heir, appearing after the money of an estate has been deposited in the school fund to repayment of the money which has been diverted from his hands. When the statute speaks of a claimant "showing himself entitled" to receive the fund, it necessarily implies proof made in due form to the proper court, and when it says that, upon such showing being made at any time within ten years, the money "shall be paid" over to him, it necessarily implies, not only the duty of the officer or officers having control of the money to surrender it, but the authority of the court to enter the proper order or judgment directing the performance of such duty. Even if the state were a necessary party, it would be no great stretch of construction to hold that the enactment of such statute, recognizing the right of the heir to establish his identity after the money had been placed in the school fund, and authorizing the court, as we think it does, to enter whatever judgment is

*5. SAME: recovery of escheated property: action against state officer: waiver.*

necessary to make the right effective, is to all intents and purposes a consent by the state to submit its adverse claims, if any it has, to the adjudication of such court. While the courts should exercise scrupulous care to respect the sovereignty of the state, they should not go far out of their way to relieve the sovereign from the duty of fair dealing. The plaintiff having appeared within the time which the state itself has prescribed, and having established her right as the heir of the deceased to the satisfaction of the court having jurisdiction of the settlement of the estate, the enforcement of her rights in the premises ought not to be denied, except for reasons of the most clear and cogent character. Such reasons are not here apparent.

It is further to be said that the act of the state in entering a voluntary appearance in the suit and in filing answer to plaintiff's claim upon its merit is a clear waiver of its right to deny its consent to the jurisdiction of the court.

IV. The court below taxed the costs of the proceeding to plaintiff, and of this she complains. The order in this respect was not erroneous. It was incumbent on plaintiff to make proof of her heirship, and, until this was done, the defendants, as custodians of the fund, were not justified in surrendering it. They asserted no personal right or interest in the matter, and, having acted only in their official capacity and within the scope of their official duties, they should not be charged with costs attendant upon such adjudication.

6. Same: costs.

It follows, from what we have said, that the judgment of the district court will be affirmed on the defendant's appeal, and upon the plaintiff's appeal it will be modified by reducing the allowance of inheritance tax from 20 per cent. the sum placed in the school fund to 5 per cent. thereof. Costs of this appeal will be taxed to the defendants.

*Affirmed* on defendant's appeal. *Modified* on plaintiff's appeal.

Ladd, C. J., and Evans and Preston, JJ., concur.