W. C. BROWN, Treasurer of State, Appellant, v. NELS PETER-
SON, Administrator, Appellee.

**TAXATION:**  Treaty Limitations.  A treaty provision to the effect
that the alien, nonresident "representatives" of an intestate
resident of this state shall succeed to the estate on the same
terms as the inhabitants of this state may succeed thereto, in-
cludes "heirs," etc., and limits the collateral inheritance tax to
5 per centum.

*Appeal from Henry District Court.*—OSCAR HALE, Judge.

JANUARY 27, 1919.

THE opinion states the case.—*Affirmed.*

*H. M. Havner,* Attorney General, and *C. A. Robbins,* Assistant Attorney General, for appellant.

*W. F. Kopp,* for appellee.

WEAVER, J.—Nellie B. Ockerson died intestate, April 25, 1914, and her entire estate passed to collateral heirs, subject to the inheritance tax provided by the statutes of Iowa.   The administrator, conceding the liability of the estate to this charge, paid to the state treasurer an amount equal to 5 per cent upon the net value of the entire estate Upon the filing of the final report, the state treasurer appeared, excepted thereto, and objected to the discharge of the administrator, upon the ground that three of the collateral heirs sharing in the estate were natives and subjects of the kingdom of Sweden, and their inheritance was, therefore, chargeable with a tax of 20 per cent, instead of 5 per cent. This claim was contested by the administrator.   On hearing before the trial court, the exceptions taken by the state treasurer were overruled, the administrator's report was approved, and he was ordered discharged.   From this order, the treasurer appeals.

The liability of the estate to the payment of the inheritance tax being conceded, the sole question to be considered is the rate at which the charge is to be computed.   The general provision of the statute (Section 1481-a, Code Supplement, 1913), is that the rate generally applicable where inheritances are taxable is 5 per cent; but, where the property passes to heirs, devisees, or other beneficiaries who are aliens and nonresidents of the United States, it shall be subject to a tax of 20 per cent.   Does the record make a case for imposing a tax at the latter rate?

It is conceded by the appellant, as has been heretofore held by this court, that, in so far as our inheritance tax may be found to be inconsistent with the stipulations or provisions of a treaty between the United States and any for-

eign nation or power, the latter must be allowed to prevail. It appears that, at the date of the death of this intestate, there was an existing treaty beween the United States and Sweden, in which is found the following provision:

"The citizens of each of the contracting parties shall have power to dispose of their personal goods within the jurisdiction of the other, by sale, donation, testament, or otherwise, and their representatives, being citizens of the other party, shall succeed to their personal goods, whether by testament or *ab intestato,* and they may in accordance with and acting under the provisions of the laws of the jurisdiction in which the property is found take possession thereof, either by themselves or others acting for them, and dispose of the same at their will, paying such dues only as the inhabitants of the country wherein such goods are shall be subject to pay in like cases." Art. XIV, Treaty of 1911.

The trial court sustained the contention of appellee that this agreement between the governments forbids the imposition of the higher tax, and we are of the opinion that this interpretation of the compact is correct. The provision in question, being found in one long sentence, which includes many subsidiary clauses, is naturally somewhat difficult of statement or paraphrase in few words; but the idea sought to be expressed is not obscure. The word "representatives" manifestly refers to and includes all those who, in the absence of disability on account of alienage, would rightfully succeed, as heirs, devisees, or legatees, to the property and estate of a deceased citizen of either of the contracting powers. Bearing this in mind, it will be seen that the agreement provides (1) for the right of a citizen of either country to freely dispose of his property within the jurisdiction of the other; and (2) for the right and authority of citizens of either power to succeed, as heirs or legatees, to personal estates, within the jurisdiction of the

other power, subject to "such dues only as the inhabitants of the country wherein such goods are shall be subject to pay in like cases." If this be a correct construction of the treaty clause, no further discussion is required. Our statute, as we have seen, imposes upon such an inheritance by one of our own citizens a tax of but 5 per cent, and such must be the maximum charge upon an inheritance by a subject of Sweden. The appellant places some reliance upon the opinion in *In re Estate of Peterson*, 168 Iowa 511, where a succession tax of 20 per cent upon property inherited by a citizen of Sweden was upheld. An examination of the case reveals that it was decided upon the terms of a treaty between those powers bearing date in the year 1827. That agreement has since been abrogated or substituted by another, which was made in the year 1911. The language above quoted is from the more recent treaty, and we think it fairly susceptible of the meaning given it by the trial court. This conclusion is also quite in harmony with our rulings in *In re Estate of Moynihan*, 172 Iowa 571; *McKeown v. Brown*, 167 Iowa 489. The decisions in *Frederickson v. State of La.*, 64 U. S. 445, and *In re Estate of Anderson*, 166 Iowa 617, cited by the appellant, involving treaties with Wurtemburg and Denmark, we do not consider controlling, as they turn upon language in those treaties for which we find no equivalent expression in the present treaty with Sweden.

There is no error in the record, and the order appealed from is—*Affirmed*.

Ladd, C. J., Gaynor, Salinger, and Stevens, JJ., concur.