STANLEY M. CORBETT, guardian of the property of Constantine Neonakis, a minor, appellant, v. VIOLA STERGIOS, a/k/a Viola Steryiakis, appellee.

No. 51095.

(Reported in 126 N.W.2d 342)

FEBRUARY 11, 1964.

14

Gleysteen, Nelson, Harper, Kunze & Eidsmoe, of Sioux City, and George S. Porikos, of Chicago, Illinois, for Stephanos G. Rocanas, Consul General of Greece, for appellant.

McQueen, Forker, Dandos & Larson, of Sioux City, for appellee.

PETERSON, J.—This is an action in equity by appellant to reopen the estate of Nicholas Stergios and set aside the final report in the estate. Petition also prays to recover two thirds of the estate by plaintiff as guardian of Constantine Neonakis, a minor now approximately eight years of age, living on the island of Crete in Greece. Plaintiff alleged he was an adopted child of decedent; adopted after execution of decedent's will. The trial court held appellant had not carried the burden of proof necessary to establish the right of said minor to claim property in the United States, and dismissed the petition. Plaintiff appealed.

I. Nicholas Steryiakis, commonly known as Nick Stergios, came to the United States from Greece many years ago. He accumulated a substantial estate, mostly in real estate, valued at approximately $60,000 at time of his death. In March 1946 he married defendant. At that time she was only eighteen years of age. She only had a sixth grade education, and was of Irish-English extraction. She never learned to speak, read or understand the Greek language. Mr. Stergios was fifty-four years of age when he married her. They never had any children of their own and in 1957 by mutual consent and discussion, they decided that Nick would adopt a child from Greece. The child was his great-nephew, being the son of Penelope Neonakis, a niece. Her husband had been killed in battle, and she was a widow.

Early in 1958 Nick and Viola went to Chicago to visit the

Greek Consulate about the final procedure necessary to secure the little boy. Viola did not understand the conversation because it was all carried on in Greek between the officials of the Consulate and her husband, Nick. The necessary adoption papers were signed by him. Viola also signed a paper, although she could not read it and did not understand it. She was under the impression that both she and Nick were adopting the little boy. The paper she signed was only a consent to the adoption. A petition for adoption had previously been filed by Nicholas Stergios, through an attorney-in-fact in the town of Heracleon on the island of Crete in Greece. The child's mother appeared for him, and consented to the adoption. The necessary hearings were held in court and on February 22, 1958, the court entered adoption decree.

August 20, 1958, Nick Stergios departed this life at Sioux City. He had made a will some years prior to his death in which he gave certain properties to a niece, and bequeathed the remainder of his estate to his widow, Viola. She filed the will. It was duly probated. In the course of time the estate was closed and the property divided between the widow and the niece in accordance with the terms of the will.

February 15, 1961, Stanley M. Corbett of Sioux City was appointed guardian of the property of Constantine Neonakis, and this action was started against Viola Stergios for the recovery of two thirds of the property, on the theory that Neonakis was the heir of Nick Stergios, becoming such heir because the will was made long before the adoption.

II. Appellant urges this one proposition relied upon for reversal: "The Court erred in holding that Treaty between the United States and Greece did not allow plaintiff's ward, a citizen of Greece, to take an interest in the estate of his adopting father."

Appellant raises four questions under the above general statement, which he calls Brief Points, as follows:

"1. Treaties entered into by the United States with foreign governments are the supreme law of the land, and insofar as state constitutions, statutes and common law are in conflict, they are suspended or invalidated.

"2. The treaty between the United States and Greece clearly allows citizens of Greece the right to inherit real and personal property located in any of the states and territories although state law may limit the period of time during which it may be held by the alien.

"3. By virtue of the most-favored-nation clauses contained in the Treaty between the United States and Greece, a Greek national is entitled to the benefit of treaties which may be even more liberal than the Greek treaty.

"4. Treaties must be interpreted liberally so as to give effect to all rights which may reasonably be claimed thereunder."

III.   In order to clarify the situation as between the treaty and our statutory provisions a brief legislative history is advisable. Such statutory provisions appear in chapter 567 denominated "Rights of Aliens." What is now section 567.1 was adopted in 1868 and has been carried in practically the same form in our various Codes throughout the years. In general the section provides that nonresident aliens may hold a devise or a distribution under a will for a period of 20 years. It limits the holding of nonresident alien to 320 acres of land and places no restriction upon personal property.

Various implementing sections were adopted in later years, some appearing first in the Code of 1897 and later Codes, and another section appeared first in the Code Supplement of 1913. Considering the chapter incomplete the General Assembly in 1951 adopted section 567.8 pertaining to nonresident aliens which became effective July 4, 1951. It provides: "Aliens' inheritances. 1. The right of aliens not residing within the United States or its territories to take real property in this state by succession or testamentary disposition, upon the same terms and conditions as residents and citizens of the United States *is dependent in each case upon the existence of a reciprocal right upon the part of citizens of the United States to take real property upon the same terms and conditions* as residents and citizens of the respective countries of which such aliens are residents and the right of aliens not residing in the United States or its territories to take personal property in this state by succession or testamentary disposition, upon the same terms and

conditions as residents and citizens of the United States is dependent in each case upon the existence of a reciprocal right upon the part of citizens of the United States to take personal property upon the same terms and conditions as residents and citizens of the respective countries of which such aliens are residents. 2. The burden shall be upon such nonresident aliens to establish the fact of existence of the reciprocal right set forth in subsection 1." (Emphasis ours.)

There was offered in evidence and made a part of the record a document known as "TREATY OF FRIENDSHIP, COMMERCE AND NAVIGATION BETWEEN THE UNITED STATES OF AMERICA AND THE KINGDOM OF GREECE." It was entered into between the two nations in 1954. It pertains to many matters and contains 26 articles.

Article I provides: "Each Party shall at all times accord equitable treatment to the persons, property, enterprises and other interests of nationals and companies of the other Party."

Article VIII provides in part: "Neither Party shall take unreasonable or discriminatory measures that would impair the legally acquired rights or interest within its territories of nationals and companies of the other Party * * *."

Article IX pertains specifically to the ownership of property of the nationals of the respective countries in the other country.

Section 1A states: "In the case of nationals * * * of Greece the acquisition by purchase, *or otherwise,* of ownership rights in land, buildings, and other immovable property within the territories of the United States, shall be dependent upon the applicable laws of the *States,* * * * of the United States of America within which such property is located."

Section 1B provides: "In the case of nationals * * * of the United States of America the right to acquire by purchase, or otherwise, * * * land, buildings, and other immovable property within the territories of Greece, *shall be subject to restrictions which Greece may consider it necessary to impose on the right of aliens to acquire by purchase, or otherwise,* * * * such property in specific frontier and coastal areas. [Emphasis supplied.]

"2. Nationals and companies of either Party shall be per-

mitted freely to dispose of property within the territories of the other Party with respect to the acquisition of which through testate or intestate succession their alienage has prevented them from receiving national treatment, and they shall be permitted a term of at least five years in which to effect such disposition.

"3. Nationals and companies of either Party shall be accorded within the territories of the other Party national treatment with respect to disposing of property of all kinds."

"Article XXIV

"1. The term 'national treatment' means treatment accorded within the territories of a Party upon terms no less favorable than the treatment accorded therein, in like situations, to nationals, companies, products, vessels or other objects, as the case may be, of such Party. *The term does not imply immunity from the laws and regulations of a Party which apply in a non-discriminatory manner to nationals, companies, products, vessels, or other objects, as the case may be, of both Parties.* [Emphasis ours.]

"2. The term 'most-favored-nation treatment' means treatment accorded within the territories of a Party upon terms no less favorable than the treatment accorded therein, in like situations, to nationals, companies, products, vessels or other objects, as the case may be, of any third country."

Section 567.8 is specific on the matter of reciprocal rights of citizens of the United States and citizens of contracting countries. The importance of reciprocity is emphasized by the terms and conditions of the section. It has been recognized by the Supreme Court of the United States in Clark v. Allen, 331 U. S. 503, 516, 67 S. Ct. 1431, 1438, 91 L. Ed. 1633, in the following language:

"The argument is based on the fact that under the statute the right of nonresident aliens to take by succession or testamentary disposition is dependent upon the existence of reciprocal right on the part of citizens of the United States to take personalty on the same terms and conditions as residents and citizens of the other nation. The argument is that by this method California seeks to promote the right of American

citizens to inherit abroad by offering to aliens reciprocal rights of inheritance in California. Such an offer of reciprocal arrangements is said to be a matter for settlement by the Federal Government on a nation-wide basis. * * * Nor has California entered the forbidden domain of negotiating with a foreign country * * *. What California has done will have some incidental or indirect effect in foreign countries. But that is true of many state laws which none would claim cross the forbidden line." The decision approved the reciprocal right theory.

IV. Under brief points 1 and 2 appellant contends the trial court erred in that treaties between the United States and foreign governments are the supreme laws of the land and that in fact the provisions of the treaty and the provisions of 567.8 were in conflict and the treaty superseded the terms of 567.8. Appellant contends under Article IX, section 2, nationals of Greece were permitted to freely dispose of property in Iowa depending on the provisions of section 567.1. In the first place the provision of the treaty which requires reciprocal rights as between the nationals of the two contracting countries supersedes any other and later provisions. In Article XXIV, section 1, of the treaty we find a provision explaining and to a certain extent nullifying the provisions of Article IX, section 2, where it states: "The term 'national treatment' means treatment accorded within the territories of a Party upon terms no less favorable than the treatment accorded therein, in like situations, to nationals * * * of such Party. The term does not imply immunity from the laws and regulations * * * of both Parties."

Appellant emphasizes disposal of property. He ignores the fact that before the ward can own and dispose of the property he must acquire it according to: 1. Laws of Iowa. 2. Reciprocal provision of treaty. 3. By carrying the burden of proof as to all facts.

In the case at bar the matter of alien ownership of property is covered by chapter 567. The laws of the State of Iowa are not in conflict with the treaty as a matter of law, in connection with the case at bar. It is a question of fact. In Article IX, section 1B, the Kingdom of Greece reserves the right to restrict the right of aliens to acquire by purchase or

otherwise, property in specific frontier and coastal areas. Constantine lived in a frontier and coastal area. This is a factual situation and is not a technical legal question. This is the point at which the trial court held appellant had not carried his burden of proving certain facts in the case. The facts appellant failed to prove were either that Greece had not imposed conditions on United States nationals on the island of Crete in Greece, or if some restrictions had been placed on United States nationals, were they such as interfered in any manner with the provisions of section 567.8? It was at this point in the treaty Greece reserved the right to put restrictions on United States nationals. Did they or did they not put on restrictions? The record is silent as to these facts. The primary question, and the one of first importance, *of reciprocal rights,* has been clearly emphasized in several Iowa decisions in which the question of inheritance taxes was involved. Inheritance tax is fixed at twenty percent on property passing under a will to, or inherited by, aliens. Code of Iowa, section 450.11.

We have held if United States nationals are entitled under the laws of another contracting country, or by treaty with such country, to the same inheritance tax percentages as nationals of the contracting country, we will only charge the alien the same percentage in our state. McKeown v. Brown, 167 Iowa 489, 149 N.W. 593; In re Estate of Moynihan, 172 Iowa 571, 151 N.W. 504, L. R. A. 1916D 1127; Brown v. Peterson, 185 Iowa 314, 170 N.W. 444.

If there is an unreconcilable conflict between sections 567.1 and 567.8, the late enactment will control. State v. Blackburn, 237 Iowa 1019, 22 N.W.2d 821; Iowa-Nebraska Light & Power Co. v. Villisca, 220 Iowa 238, 261 N.W. 423; State v. Harper, 220 Iowa 515, 258 N.W. 886; 82 C. J. S., Statutes, section 368, page 839.

In the case at bar this is a reasonable development, as there have been many changes among the relationship of people and nations, and as to statutes and treaties between 1868 and 1954.

V. Under brief point 3 appellant contends his ward is entitled to some type of benefits by reason of the most-favored-

nation clause in the treaty. A peculiar situation pertains to the treaty as to most-favored-nation treatment.

The treaty with Greece provides for most-favored nations treatment in regard to only certain subjects in the treaty. Among the 26 articles of the treaty providing for most-favored nations treatment are only Articles II, VI, VII, XII, XVII, XIX and XXI and XXIV.

*There is no such most-favored nations provision in Article IX of the Friendship Treaty with Greece.* This is the Article which plaintiff-appellant attempts to apply in seeking relief from the court. The other articles specifically spell out when the most-favored nations provision is to apply. Since Article IX contains no such provision, we can only assume that Congress did not intend to apply the most-favored nations provision to this article.

The German Treaty in Article XI specifically refers to the most-favored nations treatment in disposing of property. This is different from the Greek Treaty which does not mention such treatment. Since the treaties were enacted at approximately the same time, we can only assume that Congress intended that as far as the Greek Treaty is concerned the most-favored nations treatment would not apply to Article IX.

We have here a different situation from the case of *Santovincenzo* v. *Egan,* 284 U. S. 30, 52 S. Ct. 81, 76 L. Ed. 151, cited in plaintiff-appellant's brief. There the treaty specifically contained a most-favored nations Treaty provision with regard to the subject under consideration. This is different from the Greek Treaty as far as Article IX is concerned. It would be wrong to apply the most-favored nations treaty clause to the pertinent Article of the Greek Treaty when it contained no such provision. This would give it an application broader than intended.

The quotation from the Friendship Treaty with Greece on page 28 of plaintiff-appellant's brief is apparently from the preamble of this treaty, and does not refer to specific articles as they appear in the treaty.

VI. The fourth brief point of appellant is that treaties should be interpreted liberally so as to give effect to all

rights which may reasonably be claimed thereunder. This theory of liberal treatment is considered in Kolovrat v. Oregon, 366 U. S. 187, 81 S. Ct. 922, 6 L. Ed.2d 218; Doehrel v. Hillmer, 102 Iowa 169, 172, 71 N.W. 204. Liberal interpretation is all right as to doubtful clauses, but it must not change the meaning of a treaty.

In the case of Doehrel v. Hillmer, supra, we said: " 'Where a treaty admits of two constructions, one restrictive as to the rights that may be claimed under it, and the other liberal, the latter is to be preferred.' "

This theory is correct where two constructions are possible, but in the first place there are no two constructions to be differentiated in the case at bar, and in the second place the theory of liberality does not reach to the point of changing the clear meaning of treaties and statutes. We are not faced with the dilemma in the instant case.

A treaty between nations is dual in purpose. It establishes broad political and commercial rights as between the governments of the two nations. It also grants privileges, rights and obligations between the citizens of each nation, commonly known as nationals. 87 C. J. S., Treaties, sections 1 and 2; 52 Am. Jur., Treaties, sections 1 and 4.

In a judicial construction of a treaty the same general rules apply as pertain to contracts and statutes. As in such cases, the intention of the parties shall have primary consideration. 52 Am. Jur., Treaties, section 12. In re Estate of Anderson, 166 Iowa 617, 147 N.W. 1098, 52 L. R. A., N. S., 686.

As pertaining to the case at bar some of the statements in Am. Jur., supra, are relevant, "* * * a treaty should be given such a construction as will avoid unjust and unreasonable conclusions * * * and such as tends to the common advantage of the contracting parties * * * but not such as will put aliens on a more favorable footing than our own citizens." Also "The courts are not required to * * * place an unreasonable interpretation upon it for the purpose of securing to foreigners privileges which are denied to citizens of this country."

VII. Recapping briefly. The trial court found plaintiff had not carried the burden of offering sufficient evidence to

comply with terms of section 567.8. The court correctly states it cannot be presumed reciprocal rights exist; proof must be introduced.

Subsection (a) provides nationals of Greece may acquire by purchase, or otherwise (like inheritance), the ownership of property in accordance with applicable laws of States within which the property is located. This right is definite and specific.

Subsection (b) provides nationals of the United States may acquire property in Greece by purchase, or otherwise, but such acquisition *"shall be subject to restrictions which Greece may consider it necessary to impose on the right of aliens * * * in specific frontier and coastal areas."*

Appellant failed to carry the burden of proof as to restrictions, if any, imposed by Greece; or if none, the fact that there were none.

■ There is complete lack of reciprocity under Code section 567.8. Professor Willard Boyd worded it succinctly, and we believe correctly, in his article in 47 Iowa Law Review, page 108, in following language: "The language of section 567.8 of the Iowa Code permits only two alternatives; the alien residing in a foreign country can either take real or personal property by succession on equal terms with residents and citizens of the United States or he can take nothing."

■ VIII. The decision of the trial court was also based upon the fact that there is a lack of reciprocity as follows: In Iowa there appears in section 600.6, Code of Iowa, the following provision: "Status of the adopted child. Upon the entering of such decree, the rights, duties, and relationships between the child and parent by adoption shall be the same that exist between parents and child by lawful birth and the right of inheritance from each other shall be the same as between parent and children born in lawful wedlock."

A duly verified copy of the Greek civil law pertaining to adoption was offered in evidence. A portion of Article 1643 of chapter 13, pertaining to adoption provides as follows: "The adoptive parent does not have any inheritance rights over the adopted child."

This is not reciprocity as between the citizens and nationals of the two countries. The provisions are contrary to each other.

The decision of the trial court is affirmed.—Affirmed.

HAYS, LARSON, THORNTON and STUART, JJ., concur.

GARFIELD, C. J., and THOMPSON, SNELL and MOORE, JJ., dissent.

GARFIELD, C. J. (dissenting)—I must dissent.

Plaintiff-appellant states a single proposition he relies on for reversal—that the trial court erred in holding the treaty between the United States and Greece did not allow plaintiff's ward, a citizen of Greece, to take an interest in the estate of his adopting father.

In an able brief plaintiff cites Article VI of the Federal Constitution, three decisions of the supreme court, our own case of Opel v. Shoup, 100 Iowa 407, 423, 69 N.W. 560, 37 L. R. A. 583, and the article by Professor Boyd in 47 Iowa Law Review 105, 117, to which the majority refers, as authority for the point that treaties between the United States and foreign governments are the supreme law of the land and insofar as state statutes are in conflict therewith they are suspended. To like effect are Doehrel v. Hillmer (Ladd, J.), 102 Iowa 169, 171, 71 N.W. 204, and In re Estate of Klug, 251 Iowa 1128, 1136, 104 N.W.2d 600, 604.

The annotation in 4 A. L. R. 1377, 1383, 1384, cites a long list of decisions, including many others from Iowa, for the point plaintiff makes. Additional, more recent, precedents are cited in annotation, 134 A. L. R. 882, 885.

The article by Professor Boyd, supra, states: "Because treaties are given supremacy over state laws by the federal constitution, restrictions such as Iowa has placed on rights of non-resident aliens are of no effect when in conflict with more liberal treaty provisions."

Plaintiff's principal reliance is upon Article IX, 2, of the treaty between the United States and Greece which provides: "2. Nationals and companies of either Party shall be permitted freely to dispose of property within the territories of the other

Party with respect to the acquisition of which through testate or intestate succession their alienage has prevented them from receiving national treatment, and they shall be permitted a term of at least five years in which to effect such disposition."

Plaintiff argues this provision means that if a Greek national is prevented by his alienage from acquiring by succession property in a state in the same manner an American national may acquire it, the Greek shall be permitted to dispose of the property within five years. In other words, it is plaintiff's contention that Article IX of the treaty provides Greeks shall be able to acquire property in the United States but the states may place restrictions on its acquisition. And if they do, the Greek shall have up to five years to dispose of his property.

The article by Professor Boyd in 47 Iowa Law Review 105, 116, 117, refers to a number of recent treaties of "Friendship, Commerce and Navigation", as this treaty is designated, between the United States and a foreign country which "have required that the alien beneficiaries dispose of the property within five years."

An article by Professor Boyd in 51 Michigan Law Review 1001, 1016, states: "The predominant treaty right granted to aliens is a qualified one. The alien is allowed a specified period of time in which to liquidate the realty and remove the proceeds without restraint or interference from the country in which it is situated. By this method the states are left to determine their own policies concerning the holding of realty by aliens and at the same time the alien is allowed the market value of the property and forfeiture is avoided."

Professor Boyd observes at page 118 of his article, supra, in the Iowa Law Review, "It is often said that treaties are to be liberally construed in order to effectuate the spirit of the nations' agreement."

The United States Supreme Court has said: "Where a treaty admits of two constructions, one restrictive as to the rights that may be claimed under it, and the other liberal, the latter is to be preferred." (Citation) Hauenstein v. Lynham, 100 U. S. 483, 487, 25 L. Ed. 628, 629. Doehrel v. Hillmer,

supra, 102 Iowa 169, 172, 71 N.W. 204, 205, quotes this with approval.

If Article IX, 2, of the treaty here is fairly susceptible of the meaning plaintiff ascribes to it, and I think it is, it seems clear the restriction on ownership of property contained in our Code section 567.8, on which the majority decides this case, is suspended or rendered ineffective by the treaty unless the Greek national attempts to hold the property longer than five years. Plaintiff appears to have a valid claim under the terms of this treaty to the property in controversy here. The more restrictive and conflicting provisions of our Code section 567.8 are ineffective as to plaintiff's ward and plaintiff is not required to prove the existence of reciprocal rights as the statute contemplates.

I think Doehrel v. Hillmer, supra, 102 Iowa 169, 71 N.W. 204, and Ahrens v. Ahrens, 144 Iowa 486, 489, 123 N.W. 164, Ann. Cas. 1912A 1098, tend to support this view. The Ahrens opinion states, "That the right to sell carried with it the ownership as a necessary incident to the power of sale is held by all the authorities."

I understand the principal basis of the majority's decision is plaintiff's failure to prove that under Greek law no restriction not reciprocal is placed on the right of nationals of the United States to inherit property in Greece and we are told plaintiff had the burden to establish such reciprocal right. It is true our Code section 567.8, paragraph 2, so provides. However, the treaty contains no such provision and it is "the supreme law of the land." The requirement of our statute is more restrictive than the provisions of the treaty and they control. The effect of the majority opinion is that more restrictive provisions of section 567.8, paragraph 2, are made to supersede the treaty.

I would reverse.

THOMPSON, SNELL and MOORE, JJ., join in this dissent.