STANLEY M. CORBETT, guardian of the property of Constantine Neonakis, a minor, appellant, v. VIOLA STERGIOS, also known as Viola Steryiakis, appellee.

No. 51095.

(Reported in 137 N.W.2d 266)

1388

SEPTEMBER 21, 1965.

Gleysteen, Nelson, Harper, Kunze, Eidsmoe & Carew, of Sioux City, for appellant.

McQueen & Dandos, of Sioux City, for appellee.

GARFIELD, C. J.—This is an action in equity to recover a share of a decedent's estate by the guardian of a minor adopted by the decedent after he made his will. The action is based on section 600.6, Code, 1962, which provides rights of inheritance between a child and parent by adoption shall be the same as those between parent and child born in lawful wedlock, and section 633.13 (the "pretermitted heir statute") which states that when a testator has a child born after his last will is made for whom there is no settlement or provision in the will the child shall inherit the same interest in the estate as if no will had been made.

The adoption was by decree of a Greek court where the child resided.

Following trial the district court denied relief on the ground plaintiff failed to prove Greek law placed no restriction which was not reciprocal on the right of nationals of the United States

to inherit property in Greece, as required by our Code section 567.8, subdivision 2. Plaintiff contended such requirement was nullified by provisions of a treaty between the United States and Greece which was the supreme law of the land. Upon plaintiff's appeal to us the trial court's decision was affirmed by a vote of five to four. Corbett, guardian, v. Stergios, 256 Iowa 12, 126 N.W.2d 342.

Upon plaintiff's appeal to the Supreme Court of the United States the cited decision was reversed on May 3, 1965 (381 U. S. 124, 85 S. Ct. 1364, 14 L. Ed.2d 260), and the cause was later remanded to us for further proceedings not inconsistent with the Supreme Court's opinion.

Plaintiff then filed application with us for order or procedendo granting the prayer of his petition and defendant filed resistance thereto. The application and resistance were orally argued and a brief has been filed by each side. In view of the reversal and remand to us by the Supreme Court and the principal controverted question presented by the application and resistance, this supplemental opinion is deemed desirable.

Defendant's brief in support of her resistance to plaintiff's application asks us to affirm the trial court's decree on the ground it would be contrary to the public policy of this state to recognize the decree of adoption by the Greek court.

Defendant's answer, as amended five days after the evidence was taken, did not raise the issue that recognition of the adoption decree would be contrary to the public policy of Iowa. No such issue was presented by the pleadings. Defendant did allege in her amendment to answer she did not consent to the adoption and a fraud was committed upon her by her husband (decedent) to obtain her signature to a paper giving such consent. The trial court considered these pleaded issues and one of its conclusions of law was "the judgment of the Greek court adopting the child to Nick Stergios is conclusive upon this court, no fraud having been shown in its procurement."

In a motion "for directed verdict", evidently intended as a motion to dismiss, dictated into the record at the close of plaintiff's evidence and renewed at the close of all the evidence, defendant did assert as one of several grounds therefor that Iowa

law and its public policy does not recognize this adoption as valid. And defendant's brief upon the original submission to us stated and argued the proposition that the adoption decree conflicts with the public policy and law of Iowa in matters of adoption and should not be given effect here. Plaintiff-appellant's reply brief purported to answer the proposition.

It must be conceded our decision affirming the trial court's dismissal of the case on the only ground on which such dismissal was based was effectively reversed by the Supreme Court. It is doubtful at best that defendant is entitled at this stage of the proceeding to urge that the trial court should be affirmed on a ground not pleaded and not sustained by anything contained in our opinion in 256 Iowa 12, 126 N.W.2d 342. Defendant did not ask a rehearing on the ground the point now urged was overlooked and it should be decided. See as bearing on this Claiborne-Reno Co. v. E. I. Dupont de Nemours & Co., 8 Cir., Iowa, 77 F.2d 565, 568.

■ An adoption decree of a court of another state or nation is entitled to recognition here, if the court had jurisdiction to render it, at least to the extent it does not offend the laws or the public policy of this state. Cook v. Estate of Todd, 249 Iowa 1274, 1277, 90 N.W.2d 23, 25, 66 A. L. R.2d 1257, and citations; In re Estate of Drumheller, 252 Iowa 1378, 1381, 110 N.W.2d 833, 834, 87 A. L. R.2d 1233, and annotation 1240, 1244, 1245; Annotation 154 A. L. R. 1179.

Volume 2 Am. Jur.2d, Adoption, section 114, states the above rule in somewhat more detail and adds: "Under the rule stated, the status acquired by a valid decree of adoption in one state will be recognized and given the same effect by the courts of another state in determining rights of inheritance as would be given if the status of adoption had been created by a valid decree of a court in the latter state, although the law of the state creating the status of adoption, in respect to form and procedure, is dissimilar to the law of the situs of the property or the domicil of the decedent, and the child would not have been regarded as an adopted child had the formalities for adoption taken place there. The rule applies * * * even to cases where by the law of the situs adoption is permitted on a more restricted scale than

1392

by the law of the other state." See also 2 C. J. S., Adoption, section 66.

The annotation to our Estate of Drumheller, supra, in 87 A. L. R.2d 1240, 1244, 1245, cites decisions from about three fourths of the states, including Iowa, for the statement, "* * * the courts generally take at least the broad position that the status of adoption validly established in the place of its creation will be recognized elsewhere for purposes of the bestowal or retention of inheritance rights associated with the fact of adoption, though the method of acquiring it is different, to the extent that there is provision for such rights under the appropriate law, unless the particular adoption, in its nature, or in its method of acquisition, violates some public policy of the situs."

If we assume, without deciding, defendant is entitled at this stage to urge that the adoption decree offends the public policy of this state and hence should not be recognized here, we must hold she has not sustained the contention and the trial court's decree may not be affirmed on this ground.

■ Jurisdiction of the Greek court to render this decree of adoption is not only presumed but was proven by undisputed evidence of a well qualified witness. He was a retired Chicago attorney who graduated from a Greek law school, practiced in Athens, Greece, and later acted as counselor to the consul general of Greece in Chicago about 37 years, handling all legal matters requiring knowledge of American and Greek law. Provisions of applicable Greek law and compliance therewith in effecting this adoption were also so proven.

The annotation in 87 A. L. R.2d, supra, 1240, 1246, after citing the precedents which support the statement before quoted from pages 1244, 1245, contains this: "A fuller statement of several of the cases cited supra illustrates the liberality of the courts in recognizing adoptions obtained in foreign jurisdictions by methods far less stringent than those imposed by the particular situs, or obtained simply by a radically different method."

Loucks v. Standard Oil Co. (Cardozo, J.), 224 N. Y. 99, 111, 120 N.E. 198, 201, 202, states:

"Similarity of legislation has indeed this importance: its presence shows beyond question that the foreign statute does not

offend the local policy. But its absence does not prove the contrary. It is not to be exalted into an indispensable condition. * * *

"* * * The courts are not free to refuse to enforce a foreign right at the pleasure of the judges, to suit the individual notion of expediency or fairness. They do not close their doors, unless help would violate some fundamental principle of justice, some prevalent conception of good morals, some deep-rooted tradition of the common weal." This statement has often been repeated.

■ Defendant calls attention to several respects in which the Greek law of adoption differs from our own. We find they are not such as to indicate Greek law violates the public policy of this state. The points of difference and our comment thereon follow:

■ 1) Under Greek law the adoptive parent does not inherit from the adopted child as he does in Iowa under section 600.6, Code, 1962, referred to at the outset hereof. Under the laws of both jurisdictions, however, the adopted child inherits from the adoptive parent. This is the right involved in the present controversy. The right or nonright of the adoptive parent to inherit from the child is wholly immaterial here. 1 Am. Jur., Adoption of Children, section 67, page 669, says, "A difference in the laws of the two jurisdictions is not, of course, material, where not touching the point at issue in the particular case."

■ 2) Under our Code section 600.1 the spouse of the adoptive parent shall join in the petition for adoption unless such spouse is a natural parent of the child. Under Greek law such joinder of the spouse in the petition is not required, but consent of the spouse by a declaration before the court or in writing before a notary public is necessary. Such written consent of defendant-spouse was given here.

■ 3) Under Greek law the child need not reside in the home of the adoptive parent. In Iowa residence of the child in such home for a year is required but such period may be shortened by the court upon good cause shown when satisfied the proposed home and child are suited to each other. Investigation of the petition by our state department of social welfare or other person or agency named by the court and the period of residence

may be waived by the court where the petitioner is related to the child within the third degree of consanguinity. Iowa Code section 600.2.

Decedent was the great uncle of plaintiff child. The latter's mother was the former's niece. Hence the two were not related within the third degree of consanguinity, computed according to the civil law as provided by our Code section 4.1, paragraph 24. Chase v. Weston, 75 Iowa 159, 161, 39 N.W. 246; 26A C. J. S., Descent and Distribution, section 22, pages 562, 563; Bouvier's Law Dictionary, 1934 Ed., pages 211, 212.

Our statute, however, does not require residence of the child in the home of the adoptive parent for any particular length of time when the court is satisfied the home and the child are suited to each other. There is no evidence decedent's home and the child were not suited to each other or that decedent was not a suitable person to adopt the child.

Regarding investigation of the proposed adoption, there is little difference in the law of the two jurisdictions. The Greek court investigates the moral and financial status of the adoptive parent and must be satisfied the adoption is for the best interests of the child before the decree is entered.

4) Under Greek law the adoptive parent must be without a natural child, and 5) at least 50 years old. In both these respects and others the Greek law of adoption is more stringent than ours. We know of no authority for the contention that such a situation violates the public policy of the state where the right of inheritance is asserted. Ordinarily it is argued the public policy of such state is violated by less stringent laws of the state of adoption. Further, this decedent had no natural child and was past 50 when the adoption took place. We view these differences in the laws of the two jurisdictions as not material to the present controversy. See comment under 1, supra.

6) In Greece the adoptive parent need not see the child before it is adopted. Decedent never saw this child. There is persuasive evidence decedent long desired and intended to adopt the child and bring him to this country to live with him and defendant in their home in Sioux City. After the two signed the necessary papers in the office of the Greek consul in Chicago the

decree of adoption was rendered on February 22, 1958. The trial court found decedent became ill after the trip to Chicago, died August 20 of the same year, and his plan to bring the child to his home was not carried out because of his illness and death.

7) Under Greek law the adoptive parent, living in a foreign country, need not personally appear before the Greek court but may appear before the Greek consul designated by the court for such purpose. The consul in Chicago was so designated here. Decedent was represented by his attorney at the adoption hearing before the court which rendered the decree. So far as we can find, Iowa law does not require that the adoptive parent be personally present before the court at the hearing on the adoption.

The main precedent on which defendant relies is In re Gillies' Estate, 8 N. J. 88, 83 A.2d 889. Defendant's brief on the original submission to us also placed most reliance on the same decision. We do not regard it as in point on the facts. The court there expressed "grave doubts" as to the jurisdiction of the Greek court which rendered the decree (page 100 of 8 N. J., page 894 of 83 A.2d). There is no basis for such doubts here. Also, "a substantial portion of the proofs which have influenced us point towards a fraud upon the foreign court * * *" (page 894).

The trial court found no fraud in the procurement of this decree, the finding is not assailed and the evidence of fraud is insufficient. New Jersey law required residence of the child in petitioner's home at least a year before the adoption and the period could not be shortened to less than six months. Our statute, before summarized, is less exacting. "There [in Gillies] was substantial evidence that the deceased never had any intention to adopt the child but only to assist his immigration into the United States." Zanzonico v. Neeld, 17 N. J. 490, 497, 111 A.2d 772, 775. There is no basis for finding this decedent did not intend to adopt plaintiff child. The Zanzonico opinion also points out that the Gillies case is not authority for the proposition that the public policy of New Jersey is violated by a foreign adoption decree where the residence requirement of New Jersey law is not complied with. (There was no compliance with such

requirement in the Zanzonico case.) This later New Jersey decision also states that the Gillies holding "did not impose any rigid rule governing generally the recognition of foreign adoption decrees, as we expressly limited our holding to the facts of that case, * * *" (page 775).

Defendant also cites, as she did on the original submission, Tsilidis v. Pedakis, Fla. App., 132 So.2d 9, and Doulgeris v. Bambacus, 203 Va. 670, 127 S.E.2d 145. The former holds a Greek adoption of an adult by a Florida adult who was never married was contrary to the public policy of the state and would not be recognized there in view of the fact Florida law impliedly prohibited such an adoption.

 The Tsilidis decision is based in part on the strict construction Florida courts give its laws pertaining to adoption of adults. We do not apply the rule of strict construction to our adoption laws. Code section 4.2; Hopkins v. Antrobus, 120 Iowa 21, 24, 94 N.W. 251; In re Adoption of Alley, 234 Iowa 931, 934, 14 N.W.2d 742, 744.

Tsilidis v. Pedakis, supra, is contrary to other precedents. The annotation in 87 A. L. R.2d 1240, 1248, states: "In several cases the adoption of an adult, as permitted by the laws of the place creating the status, has been recognized for inheritance purposes at a situs the laws of which did not provide for the adoption of adults."

In re Estate of Morris, 56 Cal. App.2d 715, 720, 133 P.2d 452, 454, and Barrett v. Delmore, 143 Ohio St. 203, 54 N.E.2d 789, 153 A. L. R. 192, are both contrary to Tsilidis v. Pedakis. The Morris case holds a foreign adoption will be recognized in California "unless to extend such recognition would be contrary to pure morals or abstract justice and harmful to its own people."

Doulgeris v. Bambacus, supra, 203 Va. 670, 672, 127 S.E.2d 145, refused to recognize in Virginia a type of adoption in Greece we do not have in the present case in which "no investigation into the propriety of the adoption is required" (page 147 of 127 S.E.2d). As stated, such an investigation was required and made here. In the Doulgeris adoption the primary consideration was the best interests of the adoptive father, not those of

the child, as in Virginia and other jurisdictions of this country. It was decreed because of the convenience of the adoptive parents, "without regard as to how it affected the welfare and interests of the child" (page 149). Not true here. The Virginia court concluded "this type of adoption * * * is so different from the adoption contemplated by our statutes that it would be contrary to the public policy of this State to hold that she is a 'legally adopted child' " (page 149).

Precedents which lend support to our decision include Delaney v. First National Bank in Albuquerque, 73 N. M. 192, 386 P.2d 711, 714, 715; In re Schultz Estate, 220 Ore. 350, 361, 348 P.2d 22, 28, 81 A. L. R.2d 1121, 1127, 1128, and annotation, 1128, 1134; Martinez v. Gutierrez (Tex. Com. App.), 66 S.W.2d 678.

The Schultz case, supra, holds that in order for an adoption to be contrary to the public policy of Oregon there must be something more than an Oregon statute prohibiting it, " 'there must be something which offends by shocking moral standards, or is injurious or pernicious to the public welfare'." This is said to be the gist of the rule taken from the classic case of Loucks v. Standard Oil Co., supra, 224 N. Y. 99, 120 N.E. 198, 201, 202, which we quote above, also quoted in Schultz.

The Delaney decision, supra, points out, in effect, that the overriding public policy of New Mexico was to treat adopted children the same as natural children.

Although not in point on the facts, Tschirgi v. Merchants National Bank, 253 Iowa 682, 690, 691, 113 N.W.2d 226, 231, may be worthy of mention. It considers a claim that public policy was violated in the making of a corporate contract and holds the claim should not be sustained "unless the preservation of the general public welfare so demands. (Citations) '* * * the power of courts to declare a contract void for being in contravention of sound public policy is a very delicate and undefined power, and, like the power to declare a statute unconstitutional, should be exercised only in cases free from doubt'."

It should be made clear that defendant asks us, on the record made at the trial, not to recognize this adoption because it is said to offend the public policy of this state. As previously

stated, we think she has failed to sustain the contention and that plaintiff is entitled to inherit and recover the share of decedent's estate which the statutes of this state provide. Plaintiff is also entitled to recover costs of $465.23 on the appeal to the Supreme Court. For further proceedings in accord with this opinion the decree is reversed and the cause remanded to the district court. —Decree reversed and cause remanded.

LARSON, THORNTON, SNELL, MOORE and STUART, JJ., concur.

RAWLINGS, J., takes no part.