BARRY E. (ANONYMOUS) et al., Respondents, v HOLLIS INGRAHAM, Individually and as State Commissioner of Health, Appellant.

Second Department, May 3, 1976

*Louis J. Lefkowitz, Attorney-General (David L. Birch* and *Samuel A. Hirshowitz* of counsel), for appellant.

*Martin Ginsberg (Neal Forman* of counsel), for respondent.

TITONE, J. Petitioners, a married couple domiciled in this State, adopted a New York-born female infant pursuant to an order of the Second Civil Court of Bravos District, State of Chihuahua, Republic of Mexico, on or about March 12, 1974. The natural mother, who consented to the adoption, is also a domiciliary of this State. She gave birth to the child on November 22, 1973 in Syosset, New York. The natural father is unknown. Both the adoptive parents and the natural mother personally appeared before the Mexican court by special attorneys and submitted themselves to its jurisdiction and competence. Submitted in evidence were statements of four character witnesses on behalf of the petitioners. The order of adoption directs that the child's name be changed in accordance with the request of the petitioners.

Following the adoption, the petitioners applied to the State Commissioner of Health for a new birth certificate which would reflect the child's adoptive name. The commissioner denied the application on the ground that he could issue a new certificate "only when * * * notified of such adoption by a court of *competent jurisdiction"* (emphasis in original) (see Public Health Law, § 4138, subd 1, pars [a], [b]) and that, in this instance, the Mexican court was not competent to issue the subject order. He advised the petitioners to obtain an order from an appropriate New York court. However, notwithstanding that he promised to comply with a court order of this State directing the issuance of a new birth certificate, the commissioner has appealed from the order of Special Term which granted the petitioners' application for such relief.

In attacking the validity of the Mexican order, the commissioner argues that the issuance of a new birth certificate would somehow represent an abdication of this State's role as *parens patriae* on behalf of the child. He also asserts that the order should not be recognized under the principles of comity

since it contravenes our own policy with respect to the adoption of children. We disagree.

At the outset we find no statutory provision which expressly or impliedly confers upon the Department of Health, or its commissioner, the right to collaterally attack the jurisdiction of any court to render an order of adoption. The function of the department, under the law, is to supervise, regulate and promote public health activities in this State for its citizens (Public Health Law, § 201), while the role of the commissioner is to exercise the functions, powers and duties of the department in the field of public health as prescribed by law (Public Health Law, § 206). With respect to the keeping of records of vital statistics, the department is charged with the custodial responsibility of supervising and controlling the registration of births, deaths and marriages (Public Health Law, § 201, subd 1, par [b]), while the commissioner is mandated, ministerially, to "obtain, collect and preserve such information relating to marriage, birth, mortality, disease and health as may be useful in the discharge of his duties or may contribute to the promotion of health or the security of life in the state" (Public Health Law, § 206, subd 1, par [e]).

We also realize that in other jurisdictions, as well as in our own, the adoptive process has as its worthy goal the melding of a new family unit founded upon love, understanding and compassion, and also the cloaking of the child with the mantle of legitimacy where he or she was born out of wedlock. With this in mind, we do not feel that the position taken herein by the commissioner is in the best interests of the child or in the furtherance of any public policy in this State. The bureaucratic denial of the issuance of the instrument sought perpetuates, on record, the stigma of illegitimacy, with no evident benefit inuring to the public. The doctrine of *parens patriae* may not be successfully invoked to disturb a foreign decree pertaining to a child, where no showing has been made of an emergency situation affecting the immediate needs and welfare of the child (cf *Wilson v Wilson,* 172 Col 566).

Furthermore, nowhere in his papers does the commissioner demonstrate that the Mexican court was not competent to render the order in dispute. Instead he has endeavored to force the petitioners to come forth with proof as to its competency. However, such burden does not rest with the petitioners. A foreign order of adoption is presumed valid and within

the jurisdiction of the court which rendered it *(Corbett v Stergios,* 257 Iowa 1387); the burden of proof to show fraud or lack of jurisdiction of the out-of-State adoptive court falls upon the one raising the issue *(People ex rel. Osborne v Hayes,* 284 App Div 143, mot for lv to app den 283 App Div 1121). The burden of proving the repugnancy of a foreign adoption is upon the party attacking it *(National City Bank of Cleveland v Judkins,* 8 Ohio Misc 119).

A "court of competent jurisdiction", insofar as that term applies to a court outside of the United States, has been held to mean a foreign tribunal having jurisdiction according to the laws of that country. To constitute a valid adjudication by such a court, the proceeding should be similar to ours, but it need not be identical *(Matter of Neidecker,* 82 F2d 263, 265). We do not believe that the recitals contained in the Mexican order manifest such a material divergence from New York law as to warrant its rejection out of hand. It states, *inter alia,* that based upon the proof, which includes statements of persons attesting to the good character of the petitioners, the adoptive parents are over age, have sufficient means to adequately care for and support the infant and have an excellent reputation. The fact that the adoptive child may not be required to reside in the home of the adoptive parents for a six-month trial period, as is required under the law of this State (but which may be shortened in the court's discretion) (Domestic Relations Law, § 116, subd 1), does not per se render the Mexican law violative of the public policy of this State (cf *Corbett v Stergios, supra).*

Accordingly, for the reasons set forth above, and also because the commissioner concedes that his duty in this instance "is purely ministerial in nature" (cf *Deere Co. of Baltimore v Pahl Constr. Co.,* 34 AD2d 85, 89), we believe that the judgment of Special Term, directing the issuance of the new birth certificate, should be affirmed.

LATHAM, Acting P. J., DAMIANI, CHRIST and SHAPIRO, JJ., concur.

Judgment of the Supreme Court, Kings County, dated April 16, 1975, affirmed, without costs or disbursements.